UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEVON CHRISTOPHER WENGER,<br><br>Defendant. | Case No. 23-cr-00269-JSW-3<br><br>**ORDER DENYING DEFENDANT WENGER'S MOTIONS TO SEVER**<br><br>Re: Dkt. Nos. 104, 112 |

Now before the Court are Defendant Devon Christopher Wenger's Motion to Sever Counts (Dkt. No. 104) and Motion to Sever Defendant (Dkt. No. 112) (together, "Motions to Sever"). For the following reasons, the Court DENIES both motions.

## BACKGROUND

The Government charged Defendant Wenger alongside Defendants Morteza Amiri and Eric Rombough in a nine-count indictment. (Dkt. No. 1, Indictment.)

### A.  Count One: Conspiracy Against Rights.

All three Defendants are charged in Count One for a violation of 18 U.S.C. section 241 – Conspiracy Against Rights. (Indictment, ¶ 90.)  The Government alleges that Defendants encouraged and agreed with each other to use excessive force against individuals in Antioch. (*Id.* ¶ 11.)  It further alleges that Defendants Amiri and Rombough collected "trophies" from violent interactions with individuals. (*Id.* ¶¶ 13-18.)  Amiri allegedly sent photographs of dog bite injuries to other officers, including Wenger.

The Indictment charges Wenger with encouraging other officers to use excessive force on multiple occasions over the course of several years:

- On April 21, 2019, Wenger messaged Amiri and Rombough to "Please find this guys

[sic] and [profanity] him in the ass." (*Id.* ¶ 22.) Rombough responded, "Deal." (*Id.*) Wenger then sent a screenshot of identification records for the individual in question, and stated, "He's the [profanity] face that ran. Wants are 108 and 2800." (*Id.*) Amiri then responded, "ill [sic] bite em." (*Id.*)

- On May 6, 2020, Amiri, Rombough, and other officers planned to and then did violently arrest a suspect identified as "X.B." (*Id.* ¶¶ 35-39.) A few hours after the arrest, Wenger texted Amiri to request photographs, in violation of department policy: "Pics of [X.B.] please my dude!!! That bitch […] has talked so much shit to me! Thank you for biting that piece of shit!" (*Id.* ¶ 37.) After Amiri responded with images, Wenger texted, "You're my hero." (*Id.*)

- On August 21, 2020, Amiri texted Wenger to complain about another responding law enforcement agency having body worn cameras. (*Id.* ¶ 40.) Amiri stated, "if [Agency-1] didn't have all those body cams and that was us… we would have [profanity] him up more. He didn't get what he deserved." (*Id.*) Wenger responded, "I agree[.] That's why I don't like body cams." (*Id.*)

- On August 22, 2020, Wenger texted Amiri: "We need to get into something tonight bro!! Lets [sic] go 3 nights in a row dog bite!!! Lets [sic] get [profanity] ass [a lieutenant] something to stress out about lol." (*Id.* ¶ 41.) That night, Amiri and Wenger participated in a vehicle stop "in which the subject was pulled from the vehicle and taken to the ground." (*Id.*) After the stop, Amiri texted Wenger a photograph of the suspect's injuries. (*Id.*)

- On August 23, 2020, Amiri used his canine to bite a suspect. (*Id.* ¶ 43.) Amiri then texted Wenger multiple images of the dog bite injury. (*Id.* ¶ 44.) Wenger responded, "Home boy got lumped up!!!! Hahahah[.] The [a corporal] special[.] And the morty special." (*Id.*) Amiri responded, "bro we saw him laying in bed just acting like he was asleep. i [sic] walked out the tent and game planned how to [profanity] him up. went back and did justice. wish you were there. inside a tent with no cams… you would have loved it. [Agency-2] agreed to keep cameras off." (*Id.*) Wenger responded,

1       "Bro…[profanity] yes!!! [Profanity] that nerd!! That's what [profanity] happens when
2       you run, you acquire a tax. His tax was paid properly! Good shit bro." (*Id.*)

- On August 24, 2020, Amiri texted Wenger images of subjects with injuries and the message, "a very eventful work week 🤣🤣" (*Id.*) Wenger responded, "Hahahah [profanity] YEAH BRO." (*Id.*) Amiri then texted, "let's [profanity] some people up next work week," and Wenger responded, "Bro [profanity] the mother [profanity] yes[.] Bite some nerds and crush some dweebs bro!" (*Id.*) Amiri then responded, "hell yea bro. ill [sic] find some shit. ill [sic] write it. just come over and crush some skulls alongside purcy [Amiri's police canine]. ill [sic] handle the rest lol." (*Id.*)
- On October 8, 2020, Amiri wrote to a group chat about a suspect. (*Id.* ¶ 47.) Wenger responded, "Lets [sic] beat his [profanity] ass bro! I'm down after work morty[.]" (*Id.* ¶ 48.) Wenger then messaged Amiri outside of the group chat to say, "I'm serious bro, let's beat that dudes [sic] ass after work." (*Id.* ¶ 49.)

**B.      Counts Two Through Eight: Deprivation of Rights Under Color of Law.**

Counts Two through Eight allege violation of 18 U.S.C. section 242 – Deprivation of Rights Under Color of Law. (*Id.* ¶ 92.) Of these, Defendant Wenger is charged with only Count Eight, for an incident in which he shot a suspect ("D.S.") with a 40 mm less lethal launcher. (*Id.*)

The Indictment claims that on October 26, 2021, officers responded to a report of a stolen vehicle. (*Id.* ¶ 84.) Officers surrounded the vehicle, at which point "D.S. exited the vehicle and faced the officers, exchanging words with them." (*Id.*) Wenger asked another police officer if he had "the 40," and then stated "I got it, I want to plug him." (*Id.*) Wenger removed the 40mm less lethal launcher and "immediately" deployed it at D.S., striking him in the chest, whereupon D.S. "collapsed" toward the vehicle. (*Id.* ¶ 86.)

Wenger disputes Count Eight's characterization of events. According to Wenger, his body camera footage shows that Wenger in fact did not say, "I got it, I want to plug him," but rather that another officer told Wenger, "Hey, plug his ass with the 40." (Dkt. No. 104-1, Motion to Sever Counts, at 3:19-21.) The footage also shows that D.S. did not "collapse" toward the vehicle, but instead that D.S. continued to stand for a few seconds and then chose to reenter the vehicle. (*Id.* at

3

3:22-25.)

Counts Two through Seven involve gruesome images of dog bites and bruises from deploying a 40mm less lethal launcher at close range. In contrast, the video images referenced in Count Eight and provided as an exhibit by Defendant Wenger do not show blood or close images of bruising.

### C. Count Nine: Destruction, Alteration, and Falsification of Records in Federal Investigations.

Count Nine alleges that Defendant Amiri violated 18 U.S.C. section 1519 – Destruction, Alteration, and Falsification of Records in Federal Investigations. (*Id.* ¶ 94.) This charge relates to a July 2019 incident in which Amiri allegedly falsified a police report by omitting that an officer from a neighboring police department assisted in "getting a bite" of suspect A.A. for supposedly resisting arrest. (*Id.* ¶ 29.) Amiri allegedly admitted in a text message that A.A.'s alleged resistance was a "stretch," but that he avoided oversight because A.A. was arrested for a separate violation. (*Id.* ¶ 30.)

### D. Defendant Wenger's Motions to Sever.

Wenger moves to sever Count Eight from the remaining counts in the indictment. Wenger claims that he would suffer "extreme prejudice" relative to Count Eight if the jury is permitted to hear evidence regarding the conspiracy count and evidence of Amiri and Rombough's alleged violations. (Motion to Sever Counts, at 6:3.) Wenger further contends that the allegations in the indictment relating to Count One are remote from the allegations relating to Count Eight, both in time and in content.

Wenger also seeks to be tried separately from Amiri and Rombough. He fears that the gruesome images of suspects allegedly injured by his codefendants will inflame the jury and prevent the jury from making a reliable judgment as to Wenger. Wenger contends that his alleged conduct differs from his codefendants' in nature and degree, and that joint presentation of the evidence will lead to jury confusion to his "extreme detriment." (Dkt. No. 112-1, Motion for Severance of Defendants, at 9:20-21.)

4

## ANALYSIS

### A.  Legal Standard Applicable to Motions to Sever Counts and Defendants.

Federal Rule of Criminal Procedure 8(a) provides for joinder of offenses "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. Proc. 8(a).

Rule 8(b) permits two or more defendants to be joined together if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. Proc. 8(b). "All defendants need not be charged in each count." *Id.*

Rule 14(a) provides for severance of counts and defendants if necessary to avoid undue prejudice. *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999). Joinder of related counts is improper only if it is "manifestly prejudicial." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016).

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). In the event of joint trial with multiple defendants, severance should be granted "only if there is a serious risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Severance is not warranted "merely because [defendants] may have a better chance of acquittal in separate trials." *Id.* at 540.

### B.  Severance of Counts Is Not Warranted.

Wenger has not met the high bar of demonstrating "manifest prejudice" by joinder of Counts One and Eight. *Prigge*, 830 F.3d at 1098. Where, as here, the evidence at trial would "look the same" whether or not the counts are tried together, joinder is not prejudicial. *See id.* (rejecting argument that joining counts was prejudicial where "any evidence relevant to [the challenged] counts would also have been admissible under Count One.").

The text messages alleged in the Indictment in support of Counts One and Eight are admissible to demonstrate Wenger's state of mind with respect to the decision to shoot D.S. as

5

alleged in Count Eight. The Government explained at oral argument that its theory of the case involves a continuous course of conduct with an escalation over time. (Dkt. No. 156, Hr'g Tr., 24:11-15.) The text messages at issue are close in time, within a matter of a few years, and a jury could reasonably find that they demonstrate Wenger agreeing, planning, and encouraging other officers to engage in excessive force. Because direct evidence of state of mind is rarely available, Wenger's prior statements and actions may be used to support a finding of intent as to his own use of force against D.S.

Wenger argues that conspiracy evidence relating to conduct by Amiri and Rombough also poses great risk of prejudice. The parties anticipate that the Government will introduce gruesome images of injuries allegedly inflicted by Amiri and Rombough. Wenger believes that jurors will not be able to compartmentalize that alleged conspiracy evidence from evidence of the deprivation of rights alleged in Count Eight. However, the potential inflammatory nature of the images is insufficient, without more, to warrant severance. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) (finding severance inappropriate where defendant "ha[d] not presented any reasons, other than the emotionally-charged nature of the [first] murder, as to why the jury would be unable to consider separately the evidence that applies to the two pairs of murders.").

### C.     Severance of Defendants Is Not Warranted.

Wenger does not contend that joint trial with Amiri and Rombough would violate a specific trial right, such as his Sixth Amendment right to confront witnesses against him. *See Mayfield*, 189 F.3d at 900-01 (holding joint trial compromised right to confront witnesses by joint trial with accuser). Therefore, the Court considers whether there is a "serious risk" that joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Among the factors that heighten risk are (1) when evidence inadmissible against a defendant is admitted against a codefendant; (2) when exculpatory evidence is unavailable in a joint trial due to prejudice against a codefendant; and (3) when many defendants who are tried together "have markedly different degrees of culpability." *Id.* "[O]f foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized." *Vasquez-Velasco*, 15 F.3d at 846. Given the information currently available to the Court, all of

6

these factors weigh in favor of joinder.

Wenger does not identify evidence admissible against Amiri or Rombough which would not be admissible against Wenger, and he does not argue that any exculpatory evidence faces exclusion if he is tried alongside Amiri and Rombough. Instead, he contends generally that the grisly dog bite and shooting injuries allegedly inflicted by his codefendants would not come into a trial solely against Wenger, and that the jury may want to punish Wenger for sharing the defense table with Amiri and Rombough. This argument fails for two key reasons.

First, the Government alleges that Wenger conspired with Amiri and Rombough to inflict those injuries. For example, on August 22, 2020, Wenger texted Amiri: "We need to get into something tonight bro!! Lets [sic] go 3 nights in a row dog bite!!!" (Indictment, ¶ 41.) The next day, August 23, 2020, Amiri used his canine to bite a suspect. (*Id.* ¶ 43.) Later that day, Amiri texted Wenger photos of the dog bite injuries. (*Id.* ¶ 44.) While Wenger claims that his texts were banter between friends and not conspiracy or encouragement, the texts and photographs would be admissible in a trial solely against Wenger to show the existence of a conspiracy.

Second, a defendant is not entitled to a separate trial "merely because [he] may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. To the extent the jury may seek to inflict group punishment, the Court will instruct the jury that each charge against each defendant must be considered separately. Juries are presumed to follow instructions. *Id.*

Wenger next contends that Amiri and Rombough's alleged conduct is much more serious than his own. Unlike Wenger, both Amiri and Rombough made self-incriminating statements admitting to illegal conduct or "[v]iolating civil rights." (Motion for Severance of Defendants, at 9:3-11.) However, the Government alleges that Wenger participated in and encouraged Amiri and Rombough's activities, and therefore inculpatory statements of coconspirators made in furtherance of the conspiracy may come in as evidence against Wenger. Fed. R. Evid. 801(d)(2)(E).

Finally, Wenger argues that he did not participate in the conduct alleged in Counts Two through Seven or Count Nine, and thus evidence in support of those counts is unfairly prejudicial. This argument is unavailing at this stage. The Indictment demarcated the conduct in those counts into seven distinct charges relating to seven different events. There is no reason before the Court

why the jury would conflate the conduct in each of those counts with the conduct unique to Wenger in Count Eight.

To the extent that evidence against Amiri or Rombough would not be admissible against Wenger alone, "[t]he prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). Any potential prejudice caused by evidence relating solely to Amiri and Rombough may be cured through limiting instructions. The Court will instruct the jury regarding appropriate use of the evidence.

## CONCLUSION

For the foregoing reasons, Defendant Wenger's Motions to Sever are denied, without prejudice to renewal alongside any forthcoming motions *in limine*. Should Wenger renew his motion to sever at that time, he must set forth the specific exhibits or evidence he contends will render a joint trial unfair.

**IT IS SO ORDERED.**

Dated: August 13, 2024

_____
JEFFREY S. WHITE
United States District Judge