SEKI, NISHIMURA & WATASE, PLC
BILL H. SEKI (SBN 137045)
bseki@snw-law.com
NICOLE R. CASTRONOVO (SBN 314585)
ncastronovo@snw-law.com
600 Wilshire Boulevard, Suite 1250
Los Angeles, California 90017
Tel.: (213) 481-2869 | Fax: (213) 481-2871

Attorneys for Defendant DEVON CHRISTOPHER WENGER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEVON CHRISTOPHER WENGER,<br><br>Defendant. | Case No.: 4:23-CR-00269-JSW-3<br><br>(Hon. Jeffrey S. White)<br><br>**DEFENDANT WENGER'S NOTICE OF MOTION AND MOTION TO SUPPRESS THE FBI WARRANT DATED JULY 24, 2023 & NOTICE OF MOTION AND MOTION FOR HEARING PURSUANT TO *FRANKS V. DELAWARE*; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:   September 17, 2024**<br>**Time:   1:00 PM**<br>**Room:  5** |

\ \ \

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that on September 17, 2024 at 1:00 p.m. or as soon as the matter may be heard before the Honorable Jeffrey S. White, defendant Devon Christopher Wenger, by and through counsel of record will move for a motion to suppress evidence seized pursuant to the July 24, 2023 search warrant and a Franks hearing regarding the statements made in the July 24, 2023 search warrant.

Dated: August 13, 2024                    SEKI, NISHIMURA & WATASE, PLC

By: _/s/  Nicole Castronovo_
      NICOLE CASTRONOVO
      Attorney for Defendant
      Devon Christopher Wenger

DEFENDANT WENGER'S NOTICE OF MOTION AND MOTION TO SUPPRESS THE FBI WARRANT
DATED JULY 24, 2023 & NOTICE OF MOTION AND MOTION FOR HEARING PURSUANT TO FRANKS
V. DELAWARE; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION…………………………………………….....   3

II.  STATEMENT OF FACTS……………………………………….   3

   A.  The Government has Already Conceded the July 24, 2023
      Warrant is Problematic……………………………………………… 3

   B.  The Brief Synopsis of the Investigation ……………….……………..5

   C.  Plan Wallace's False Statements in the State Warrant……………..   5

   D.  SA Kular's False Statements in the Warrant dated July 24, 2024…….. 7

      1.  The Basis for the Probable Cause …………………………...   7
      2.  Wenger, Despite Kular's Representations, Never Admitted to
         Using Steroids …………………………………………………   9

   E.  The Government has Illegally Obtained Phone Records Outside the
      Time Periods Specified by the July 24, 2023 Warrant………………… 11

III. POINTS AND AUTHORITIES………………………..……………….   12

   A.  Evidence Obtained from the Execution of the State Court Warrant
      Should be Suppressed ………………………..……………….   13

      1.  DAI Wallace Misrepresented Facts or Demonstrated Reckless
         Disregard for the Truth Regarding the Target Phone…………   13
      2.  The State Court Search Warrant Failed to Comply with
         CalECPA …………………..……………………………   13

   B.  Evidence Obtained from the Execution of the Federal Warrants
      Should be Suppressed ……………..……………………………… 13

      1.  Violations Associated with the State Court Warrant Tainted
         Evidence Obtained from the Later Federal Warrant ………….. 13
      2.  Evidence Laundering/Parallel Construction Occurred in
         this Case …………………………………………………… 14
      3.  Uncorroborated Anonymous Tips ……………..…………… 15
      4.  The Federal Warrant Affidavit Failed to Establish
         Probable Cause ……………………………………………   16
      5.  SA Kular Set Forth Erroneous Evidence that Wenger Engaged
         in a Controlled Substance Conspiracy…………………………   17

   C.  The Particularity Requirement …………………………………   21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.   The Phone Records Exceeding the Limitations of the Warrant
Should Be Suppressed ……………………………..……………   21

IV. A FRANKS' HEARING IS NECESSARY ……………………………   22

V.  CONCLUSION …………….………………...……………………… 23

DEFENDANT COUNTY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**CASES**</u>                                                                                          <u>**PAGE**</u>

3

4      *Alabama v. White* (1990)
       496 U.S. 325, 327, 329, 332……….……………………………………..          15
5
6      *Brinegar v. United States* (1949)
       338 U.S 160, 175-176 ……………………………………………………          17
7
       *Franks v. Delaware* (1978)
8      438 U.S. 154 …….………………………………………………………          23
9      *Horton v. California* (1990)
       496 U.S. 128, 140 …………………………………………………….…          22
10
       *Illinois v. Gates* (1983)
11     462 U.S. 213, 238 ………………………………………………………          17
12
       *Kentucky v. King* (2011)
13     563 U.S. 4562, 459 ….……………………………………………….....          21
14     *Maryland v. Garrison* (2011)
       480 U.S. 79, 84 …..………………………………………………........          21
15
16     *Riley v. California* (2014)
       134 S.Ct. 2474 …..………………………………………………………          22
17
       *Segura v. United States.* (1984)
18     468 U.S. 796, 804 ……………………………………………………….          12
19
       *United States v. Christie* (10th Cir. 2013).
20     717 F.3d 1156, 1164 …………………………………………………          21
21     *United States v. Comprehensive Drug Testing Inc* (9th Circ. 2010)
       621 F.3d 1162, 1176 ………………………………………………………          22
22
       *United States v. Johnson* (6th Cir. 2010)
23     620 F.3d 685, 693-94…………………………………………………..          16
24
       *United States v. Kleinman* (9th Cir. 2017)
25     880 F.3d 1020, 1038 …..………………………………………….....          22
26     *United States v. Lewis* (3d Cir. 2012)
       672 F. 3d 232, 240……………………………………………………..          16
27
28     *United States v. Martinez-Garcia* (9th Cir. 2005)
       F.3d 1205, 1214–15………………………………………………………          23

*United States v. Otero* (10th Cir. 2009)
563 F.3d 1127, 1131-32………………………………………………… 21

*United States v. Perkin.* (9th Cir. 2017)
850 F.3d 1109, 1116 …………………………………………………23

*United States v. Rosa* (2d Cir. 2010)
626 F.3d 56, 62 ………………………………………………… 21

*Wong Sun v. United States* (1963)
371 U.S. 471, 488 ..……………………………………………….. 15


**<u>CODES</u>**                                                          **<u>PAGE</u>**

21 Code of Federal Regulations 1308.33………………………...…….… 20

21 Code of Federal Regulations 1308.34……………………………...… 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant DEVON CHRISTOPHER WENGER ("Wenger") has been charged in Count One of the Indictment with 18 U.S.C. § 241 – Conspiracy Against Rights, and in Count Eight with 18 U.S.C. § 241 – Deprivation of Rights Under Color of Law.   The government seeks to introduce records from cellular telephones, including text messages and other electronic evidence, obtained through multiple search warrants.

In this case, Defense counsel has already filed two motions challenging the veracity and validity of a federal warrant signed on May 19, 2023, (hereafter "federal warrant #1") and a state warrant signed on March 22, 2022 (hereafter "state warrant #1").

The Court previously ordered the government to turn over all discovery to Defense counsel prior to the law and motion deadline set by the Court.  After the deadline, the government produced a litany of new discovery. This included a federal search warrant signed on July 24, 2023. (Exhibit 1; DCW-000506).

This Court gave leave to Defense counsel to file additional law and motion related to the warrant signed July 24, 2023 (hereafter "federal warrant #2"). When setting this new deadline, the Court asked Defense counsel to not reinvent the wheel. As such Defense counsel will not restate all the previously cited law but will refer to the previously filed motions instead with pin cites.

## II. STATEMENT OF FACTS

### A. The Government Has Already Conceded the July 24, 2023 Warrant is Problematic

During the July 30, 2024, hearing on the Motion to Suppress and the

Franks' Hearing regarding state court warrant #1, and federal warrant #1, the government conceded it will not use direct or derivative evidence from federal warrant #1 or the July 23, 2023, warrant:

> THE COURT: Well, why wasn't -- why wasn't that -- why was that not produced to the Court -- because I'd like to know if there's any evidence derived from the second warrant that the government plans to introduce from the second warrant.
>
> MR. KRISHNAMURTHY: The answer is no. **We don't intend to introduce any evidence from the first or second warrant, or derivative evidence from either of the two warrants.**
>
> THE COURT: Why wasn't -- just out of curiosity, why wasn't that produced?
>
> MR. KRISHNAMURTHY: Well, the reason is that in the 268 case or -- sorry,  the 269 case, this case, the Court set a discovery cutoff. We  inadvertently did not produce the second warrant until after the Defense had filed their motion. We produced it after they filed their motion, but before they filed the reply. So  in deference to the Court's order in this case, we decided we're not relying on either warrant in this case.

(*Exhibit 7* - Page 12:21-25;13:1-12) [emphasis added].

This begs the question, if the federal government is not relying on federal warrant #1 or federal warrant #2 for direct or derivative evidence, but only for impeachment, how exactly is the government going to prove its case against Mr. Wenger?

The government is left with only state warrant #1, the defects of which the government has also not contested – which is notable. The government has tried to distance itself from state warrant #1 by repeatedly referencing that they did not rely upon its contents or its production in federal warrants #1 & #2. This argument

-4-

1  is undercut by the fact that state warrant #1 was attached as an exhibit to the
2  federal warrants.

3      As discussed below, despite asserting that the federal warrants were not
4  based upon the state warrant, the evidence from the state warrant was cited
5  extensively throughout federal warrant #1 and federal warrant #2.

6  **B. Brief Synopsis of the Investigation**

7      In essence, this case has had the following timeline as discussed more
8  extensively in the previously submitted law and motion by Defense Counsel. (*See*
9  *Also Motion to Suppress* pages 1-4).

10     The Manly-Williams Misconduct reported to FBI Agent Zoback (hereafter
11 "Zoback") and Zoback writes the iCloud and Instagram warrant for Manly.
12 Shortly thereafter Zoback received the "anonymous" letters. A handwriting
13 expert, Beth Chrisman, has opined that the anonymous letters appear to have been
14 written by Larry Wallace. (*Exhibit 4*).

15     Zoback then used these "anonymous" letters to conduct an unrestricted
16 search into all involved officers' iCloud accounts (including Harris and Amiri)
17 and formally bring in the Contra Costa District Attorney's Office (hereafter
18 "CCDA") via CCDA Investigator Larry Wallace. Zoback then seized the iCloud
19 messages between Harris and Wenger from Harris's iCloud and gave them to
20 Wallace.  Wallace also originally seized the use of force reports at issue, handed
21 them off to Zoback, and 8 months later the same date and time stamped evidence
22 was "reentered" into evidence by Special Agent Delgado Campos.

23     The FBI then used the iCloud data in the phone warrants to seize all the
24 officers' phones including Harris and Amiri's phones.  Prior to the return on the
25 Phone data, Zoback found use of force iCloud messages in Amiri's iCloud while
26 searching 'in furtherance of the steroid conspiracy' which is directly from the
27 "anonymous" letters, Zoback wrote a rollover warrant based on this iCloud data.

28

Zoback justified her search of the messages between Amiri and Wenger specifically due to Wallace having written a warrant for Wenger's phone for 'steroids'.

The FBI then uses all of this to search virtually everything in both Harris and Amiri's phones. The FBI then tries to wash their hands of Wallace's warrant by rewriting a warrant (federal warrant #1) for Wenger's already seized phone data based on probable cause and evidence derived from Wallace's warrant, the "anonymous" letters, and what Wallace seized. There is no probable cause listed anywhere in the search of messages between Harris and Wenger, other than Wallace's defective warrant and the "anonymous" letters which appear to have been authored by Wallace himself. (*Exhibit 4*).

The FBI then issues federal warrant #2 to clean up federal warrant #1. Currently, the government is taking the position they will not rely upon evidence from either warrant except for "impeachment." (*Exhibit 7*, page 14:21-23).

**C. Wallace's False Statements in the State Warrant**

Wallace's previous false statements in the state warrant were thoroughly outlined by Defense Counsel in the previous motions. (See *Motion to Suppress* pages 4-5).

While none of these statements are new as they pertain to the July 24, 2023, warrant, a report regarding Wallace was disclosed by the government AFTER the law and motion deadline. (*Exhibit 2*; DCW-000598).

This report describes a conversation between Assistant United States Attorneys (AUSAs) Eric Cheng, Alethea Sargent, Ajay Krishnamurthy, as well as Federal Bureau of Investigation (FBI) Special Agent (SA) Thuy Zoback and CCDA Investigator Larry Wallace on May 23, 2024 – during the time when the government was aware defense counsel was prepared to file a Motion to Suppress. The below are exact quotes, verbatim from the government's own discovery:

- Wallace stated that on March 3, 2022, he received a phone call from FBISA Krystal Martinelli regarding subscriber information for phone number 925-695-4468 (4468). SA Martinelli verbally informed Wallace that number 4468 belonged to Devon WENGER.
- Wallace said on March 2, 2022, he also received an email from SA Zoback that a cursory search revealed Devon WENGER and Kathaleen Kweder were the users of number 4468.
- Wallace said he had been speaking with SA Zoback in the days prior about submitting several subpoena requests for a list of phone numbers. Because of this, Wallace believed the information from SA Martinelli came from a subpoena, **although he never saw a subpoena. [emphasis added]**

(*Exhibit 2*; DCW-00598; *Exhibit 9*)

Even the very nexus between Wallace obtaining a number he associated with Wenger and a lawful search is tenuous.  It is still unknown if Wallace obtained the subscriber information by lawful means. (*See Exhibit 9*). Wallace stated that he received the information from the FBI, he assumed from a lawful source – a subpoena. By his own admission, Wallace was never told a subpoena existed and never saw that a subpoena existed.

Therefore, it seems that Wenger's very association to the number at issue was not lawfully obtained. That quite literally maybe where the roots of this poisonous tree were toiled.

## D. SA Kular's False Statements in the Warrant dated July 24, 2023

### 1. The Basis for the Probable Cause

On the first page of the July 24, 2023, warrant, SA Kular states

> *"I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the personal electronic device (cellular telephone) of Antioch Police Officer Devon WENGER, originally seized by the Contra Costa County District Attorney's Office pursuant to a state search warrant executed on*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> *March 23, 2022 and forensically imaged as further described*
> *in **Attachment A** (the "**Target Data**"),1 and to seize*
> *evidence of crimes as described in more detail in **Attachment B**."*

Attached to the July 24, 2023 warrant, were the previously executed state warrant dated March 22, 2022 and the previously executed federal warrant dated May 19, 2023. (*Exhibit* 1; DCW-000506).

FBI Special Agent Kular (hereafter "Kular") made the following threshold Statement at paragraph 9:

> "In March 2022, search warrants form the person and personal electronic devises for 15 subject officers were executed, along with other associated locations. Eight of those warrants were federal (including for the personal electronic devices of current Antioch Police Department Officer Mortez AMIRI and former Antioch Police Department Officer Daniel HARRIS), while an **additional seven were written by state and local law enforcement**." (*Exhibit 1*; paragraph 9). [emphasis added]

At the beginning of his affidavit in paragraph 10 Kular goes on to state:

> "During the course of this investigation, the personal cellular telephone of DEVON WENGER, was seized **pursuant to a state warrant executed on March 23, 2022, by the Contra Costa District Attorney's Office.** The state warrant is attached as Exhibit 1. I am not relying on either the existence of the state warrant or the results of any prior search to support probable cause for this warrant". Yet, in the very next paragraph Kular states, "...based on evidence seized from the cellular phones of AMIRI and HARRIS, there exists probable cause...". Kular is simultaneously stating that he did not rely upon the state warrant while still relying upon the evidence seized by the state – "the evidence seized from the cellular phones."

(*Exhibit 1*; paragraph 10). [emphasis added]

Kular also states on the same warrant, on the very same page: "While agents searched the personal cellular devices pursuant to the aforementioned search warrants, including the devices of Amiri and Harris, agents observed

numerous conversations between Wenger, Amiri, and other officers about the use of force." (*Exhibit 1; Paragraph 11*).

Despite, representing otherwise, Kular was relying on the results of prior searches, specifically, the prior search of Amiri's Phone and the Prior Search of Harris' Phone as the basis of his affidavit.  The affidavit is largely comprised of text messages seized from both the phone of Amiri and the phone of Harris during prior searches. (See *Exhibit 1, paragraph 15 to 18, 21-23, 27-28).*

In fact, the probable cause utilized to search both phones specifically the messages between Amiri and Wenger as well as Harris and Wenger. In paragraph 13, Kular states, "While agents searched the personal cellular devices **pursuant to the aforementioned search warrants**, including the devices of AMIRI and HARRIS, agents observed numerous conversations between WENGER, AMIRI, and other officers about the use of force."  The 'agents' that Kular refers to and relies on did in fact refer to Wallace's 'State Warrant' as probable cause to justify their search(es) of the cellular phones which Kular states he knew. (*Exhibit 1, paragraph 13*) [emphasis added].

## 2. Wenger, Despite Kular's Representations, Never Admitted to Using Steroids

In paragraph 30 of the search warrant, Kular stated as follows ". …Notably, by WENGER's own admission he consumed steroids for a short period of time in the year 2021." Wenger never stated he took steroids in 2021. Wenger in fact never testified he took anything in 2021.  (*Exhibit 1, paragraph 30*).

In paragraph 28, Kular misstates the truth again, "On March 9, 2022, WENGER sent HARRIS another text asking if he can come by to pick up "Mahoney's stuff.""  In fact, on that date there was no physical way that Wenger was near by to pick of "Mahoney's stuff" on March 9, 2022, as Wenger was half a state away at the Joint Force Training Base in Los Alamitos. (*Exhibit 5*).

Wenger was at Los Alamitos as part of his duties as a member of the National Guard and was bunking in a hotel in downtown Long Beach. (*Exhibit 5*). Wenger was in Southern California for drilling exercises from March 7, 2022 until March 13, 2022 at Los Alamitos. (*Exhibit 5*). As part of his duties, Wenger was tasked with inventory of the arms room at his unit: Charlie Company 1st Battalion 19th special forces group. (*Exhibit 5*).

Missing from SA Kular's affidavit is the following additional evidence:

- During Wenger's March 23, 2021 interview with the FBI, he explained, "so I looked [Testosterone Enanthate] up. [. . .] and I saw that it fell under, whatever, Title 21, as an exempted drug. And I was like, "Okay. Cool. I can take it. Like, that's awesome." So I did. [. . .] I didn't think it was illegal as it's presented [phonetic]."

Partial Transcript of Audio Transcription of March 23, 2022 Interview of Officer Devon Wenger, DCW-40000002, at DCW-4000022-23 (See *Motion to Suppress – Exhibit 7*).

Notably, the below fact was left out of the first federal warrant but included in the second federal warrant:

- Testosterone Enanthate produced by certain manufacturers was exempt from the Controlled Substances Act (meaning one does not need a prescription to use it).

In the July 24, 2023, search warrant the government added in paragraphs 30-33 to clean up its prior misrepresentations about the contents of the package. For example, the government now conceded that there is a list of **exempted** anabolic steroid products online that are not illegal. (*Exhibit 1, paragraph 31-32*). Of the list of exempted steroids, there is a lawful manufacturer in Fort Lauderdale, Florida. (*Exhibit 1, paragraph 32*). The package at issue was shipped from Florida.

1

2       **E. The Government Has Illegally Obtained Phone Records Outside the**
3           **Time Periods Specified by the July 24, 2023 Warrant.**

4          The July 24, 2023, warrant requested "All records from the **Target Data**

5   described in **Attachment A** from the time period of January 1, 2019 to March 23,

6   2022. . ." (*Exhibit 1*).

7          In its late discovery production, the government produced phone records to

8   Defense counsel dated outside the time limitations set forth in the warrant (*Exhibit*

9   *6*, US-STM-000906). Notably, the phone records pertain to a phone number

10  associated with Wenger and appear to not have been sanitized in any fashion. For

11  example, the phone records contain phone calls between the number associated

12  with Wenger and his previous attorneys, Rains Lucia Stern, PC. (*Exhibit 6*, US-

13  STM-000906).

14         The government has not only obtained records outside the dates delineated

15  by their warrant, but they have obtained privileged attorney/client

16  communications as well.

17         The government willfully obtained the phone records outside the

18  permittable time and asked for "no cells" as evidenced by the documentation from

19  T-Mobile. (*Exhibit 6*, US-STM-000910). In the description of records produced,

20  the T-Mobile declaration from their custodian of records states that the following

21  was requested:

22         Records from - 9256954468 from 01/01/2019 to 07/31/2023

23         Call Details No Cells

24         Records from 9256954468 from 01/01/2019 to 07/31/2023

25         Subscriber Info

26  (*Exhibit 6*, US-STM-000910).

27

28

It is significant that the government, even as late as 2023, was trying to confirm that the number the government associated with Wenger in fact belonged to Wenger. However, as shown in *Exhibit 6*, the subscriber for that phone number was not Devon Wenger. In fact, the subscriber information was in conflict with what was written on the affidavit by Wallce in state search warrant #1. (*Exhibit 9*). It is also significant that despite the time limitations set forth in the warrant, the **government requested records from two years beyond the permissible dates.**

## III.    POINTS AND AUTHORITIES

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Where a Fourth Amendment violation occurs and evidence is derived from an unreasonable search or seizure, the remedy is the exclusion of the evidence from trial. The "exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804 (1984).

Regarding the state court warrant for seizure of a cellular phone associated with a telephone number associated with Wenger, 1) the evidence obtained therefrom must be suppressed because the Affidavit supporting that warrant contained false statements that were either intentionally or recklessly made; and 2) the warrant was overbroad and failed to comply with the California Electronic Communications Privacy Act. ("CalECPA"). Accordingly, all evidence seized, and derivative evidence obtained, from that cellular telephone phone as a result of the defective March 22, 2022 search warrant – state warrant #1 must be suppressed.  Search warrant #1 was used as a basis to obtain the July 24, 2023 warrant – federal warrant #2.

Regarding the July 24, 2023 federal warrant, all evidence seized, and

derivative evidence obtained from that search of the same cellular phone must also be suppressed because it is fruit of the tainted state court search warrant. Independently, the Affidavit in support of the federal warrant also fails to establish probable cause and is fatally overbroad.

Additionally, the phone records from 2022-2023 were obtained outside the time periods set by the warrant and they must be suppressed alone with all derivative evidence.  It is requested further by the Defense that the government not be allowed to use the phone records from 2022-2023 for impeachment purposes either.

**A. Evidence Obtained from the Execution of the State Court Warrant Should Be Suppressed**
(*See Motion to Suppress* page 9).

**1. DAI Wallace Misrepresented Facts or Demonstrated Reckless Disregard for the Truth Regarding the Target Phone.**

Accordingly, the evidence and any derivative evidence from the search of Wenger's phone obtained because of the state court search warrant must be suppressed. (See *Motion to Suppress* page 10: 9-28; to page 12:3).

**2. The State Court Search Warrant Failed to Comply with CalECPA.**

The state court warrant for Wenger's phone violated CalECPA, and that is a separate basis requiring suppression in this case. (See *Motion to Suppress* pages 12:6 to 17:20). Accordingly, the evidence and any derivative evidence from the search of Wenger's phone obtained because of the state court search warrant must be suppressed.

**B. Evidence Obtained from the Execution of the Federal Warrants Should Be Suppressed**.

**1. Violations Associated with the State Court Warrant Tainted Evidence Obtained from the Later Federal Warrants.**

On March 23, 2022, Wenger's phone was seized by the Contra Costa County District Attorney's Office pursuant to a defective warrant in violation of CalECPA.

More than a year after the state court warrant was executed, SA Kular obtained not one but two additional federal search warrants dated May 19, 2023, and July 24, 2023. *(Exhibit 2)* Both federal warrants relied extensively on the defective state warrant. (*Ex. 1 & Ex. 3*). The second federal warrant incorporated the first federal search warrant and first state warrant:

> The Honorable Laurel Beeler, United States Magistrate Judge,
> Previously authorized a warrant for **Target Data** (3-23-mj-70708LB).
> That application and warrant are attached as Exhibit 2. This application includes additional information regarding "exempted" anabolic steroids set out in paragraphs 30-33 that were not included in the previous application.
>
> (*Exhibit 1*).

Pursuant to the May 19, 2023, two additional downloads occurred: On May 30, 2023, SA Kular collected a 128GB USB thumb drive containing a download of the subject phone from DAI Wallace and, in June 2023, FBI SA Martinelli and SI Holcombe completed a "partial reprocessing" of the "forensic image" of the phone. In so doing, California law was ignored.

Contra Costa Superior Court, the jurisdiction that issued the state court warrant for seizure of the cellular telephone and the records on it, should have been asked to issue any order regarding whether there was probable cause to believe that the information sought was relevant to an active investigation, or review, use, or disclosure as required by state or federal law. Instead, that court was not involved in the issuance of the second or third warrants.

### 2. Evidence Laundering/Parallel Construction Occurred in This Case.

Evidence laundering, also known as parallel construction, occurs when one

police officer makes a constitutional mistake in gathering evidence and then passes that evidence along to a second officer, who develops it further and then delivers it to prosecutors for use in a criminal case. "The original constitutional taint disappears in the wash." *Kay L. Levine, Jenia I. Turner, and Ronald F. Wright, Evidence Laundering in a Post-Herring World, 106 J. Crim. L. & Criminology (2016).*

*https://scholarlycommons.law.northwestern.edu/jclc/vol106/iss4/1*

In other words, parallel construction is an attempt by law enforcement to convert illegally obtained evidence into lawfully obtained evidence.

Here, as described above, the state court warrant was illegally obtained and executed. The later federal warrants attempted to cure the preexisting Constitutional defects. However, they could not.

The Target Data identified in the federal warrants was "fruit" of the illegal state search. See *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the State failed to prove a search and seizure was reasonable under Constitutional standards, any evidence obtained either directly or indirectly must be excluded).

The remedy is suppression of all evidence obtained from the warrants.

### 3. Uncorroborated Anonymous Tips

"[U]nder appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" (quoting *Alabama v. White*, 496 U.S. 325, 327. (1990)).  That being said, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." Id. (quoting *White* 496 U.S. at 329). To be reliable, an anonymous tip must "accurately predict future behavior," thereby "demonstrate[ing] 'a special familiarity with respondent's affairs,' which in turn implie[s] that the tipster had 'access to reliable information about that individual's illegal activities.'" Id. (quoting *White*, 496 U.S. at 332).

And even if the anonymous tip is reliable, it "will justify an investigative stop only if it [independently] creates reasonable suspicion that 'criminal activity may be afoot.'" Id. at 1691 (quoting *Terry*, 392, U.S, at 30); see , e.g., *United States v. Lewis*, 672 F. 3d 232, 240 (3d Cir. 2012) (affirming finding that anonymous tip did not provide reasonable suspicion for vehicle stop because informant's tip about firearms sin a white vehicle did not include any information about legali8ty of the firearms); *United States v. Johnson*, 620 F.3d 685, 693-94 (6th Cir. 2010) (holding there was no reasonable suspicion for stop, in part, because anonymous tip gave no information reasonably indicating criminal activity).

The Defense is aware that this line of cases pertains to a pat down for reasonable suspicion of a crime. Analogously, if an uncorroborated anonymous tip is not enough legally to rise to the level of reasonable suspicion, then how can it be sufficient to rise to the higher standard of probable cause?

### 4. The Federal Warrant Affidavit Failed to Establish Probable Cause.

Kular attached the DAI Wallace-drafted state court search warrant as an exhibit to the federal search warrant Affidavit, but stated he was "not relying on either the existence of the state warrant or the results of any prior search to support probable cause for this warrant." Instead, he attested that evidence seized from the cellular telephones of Amiri and Harris led him to believe there was probable cause to believe that evidence of the (new) Target Offenses existed in (old) Target Data. Even if there were new grounds to re-search the phone and its data, the evidence was already irreversibly tainted.

However, even if new warrants could cure the enumerated Constitutional defects, SA Kular failed to establish probable cause for additional searches. The determination that a warrant affidavit establishes probable cause is to be made

based on the totality of the circumstances, and probable cause exists where the sum of those circumstances reveals a "fair probability" that criminal activity has occurred, and evidence will be found at a particular location. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). At the very least, "more than bare suspicion" by the agent is necessary to establish probable cause. *Brinegar v. United States*, 338 U.S 160, 175-176 (1949) ("Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."). Probable cause to support the federal search warrant was not shown, based upon the following deficient evidence.

### 5. SA Kular Set Forth Erroneous Evidence that Wenger Engaged in a Controlled Substance Conspiracy.

Testosterone Cypionate and Enanthate are referred to various times in the warrant. They are both legal and exempt from certain manufacturers under title 21 exemptions per the DEA. (*Exhibit 1*, paragraph 32).  While the FBI relies on the labels on the vials to determine the origin of the medication – the labels are irrelevant because its not the label on the bottle that is exempt under Title 21, it's the contents within the bottle.

> Wallace's state warrant provides as follows regarding Harris's package: "On March 1, 2022, at approximately 1000 hours, you're affiant and SAs Templin, Armando Delgado-Campos, and Zoback met Sukhdeep Singh, Postal Inspector, at the United States Postal Inspection Service, 2501 Rydin Road, 2nd Floor, Richmond, CA 94850. Postal Inspector Singh opened the above listed package and located the following items: (1) package of Anadrol-50 capsule anabolic steroids; (2) twelve (12) bottles of Testosterone Cypionate C300, gray cap, 10 milligram, liquid anabolic steroids; (3) six (6) bottles of Trenbolone Al00, red cap, 10 milligram, liquid anabolic steroids; and (4) three (3) bottles of Testosterone

P 100, purple cap, 10 milligram, liquid anabolic steroids....”

Kular states in paragraph 33 of the July 24, 2023, warrant that “As shown above, the label “Trueshot Pharmaceuticals” is affixed to the vials of testosterone enanthate seized in the USPS package identified by tracking number 9405503699300174882173”. The Labels that Kular is referring to clearly say Testosterone Cypionate ‘TEST C300’ and have a grey cap. Even Wallace in his warrant specifically refers to this as: “…Testosterone Cypionate C300, gray cap…”

Not only does Kular falsely state the true contents of the package, he also omitted the fact that the package was addressed to an alias of Harris from sender: “Iron Rebel Industries in Florida”.  The package was not addressed to Wenger whatsoever.

Additionally, as mentioned in further detail above, Testosterone Enanthate was not in above mentioned March 1st package. As it turns out, Zoback grouped the bottles together from other places and sent them to all be tested together to the DEA despite them being seized from different sources. (*Exhibit 8*). Kular then relied on this DEA test and omitted these facts by stating that the Enanthate was from Harris’s March 1st package when it in fact was not.

Kular then misrepresented the DEA testing of the ‘contents’ of Dan’s seized package in paragraph 29 of the warrant, “The contents of this package (depicted below), including several glass bottles with labels of various descriptions affixed to them, were sent to the Western Laboratory in Pleasanton, California for testing. A group of these bottles tested positive for Testosterone Enanthate…”. (*Exhibit 1*).

According to the attached image, the FBI grouped all the suspected steroids they seized from Harris together and sent them to be tested together on April 3rd, 2023, over a year and one month after they seized it all from Harris. (*Exhibit 8*).

Kular is knowingly making the false statement that the items that tested positive were all from Harris's March 1, 2022 package when in fact they are not, they are everything that was seized suspected to be steroids from all of Harris's packages and houses. (*Exhibit 8*).

SA Kular included the following in his Affidavit to support a finding of probable cause that Wenger violated 21 U.S.C. 841 and 846:

- February 23, 2022 texts between Harris axnd purportedly Wenger that discussed Wenger going over to Harris' to "pick up some shit."
- March 2023 texts between Harris and purportedly Wenger that discussed Wenger going over to Harris' to pick up "Brandon's stuff" and "Mahoney's stuff."
- March 9, 2022 texts between Harris and purportedly Wenger related to a delayed package wherein a screen shot of the tracking number was exchanged.
- SA Kular's summary regarding the FBI's March 1, 2022 interception of a package with the same tracking number as the one in the screenshot Harris sent to Wenger, and containing bottles that tested positive for "Testosterone Enanthate."
- SA Kular's assertion that Testosterone Enanthate is a Schedule III narcotic under Section 812 of the Controlled Substances Act.
- SA Kular's summary of a March 23, 2023 interview. There, he claimed "Wenger indicated that in 2021 he contracted COVID-19 and as a result was experiencing muscle weakness. WENGER explained that he did in fact purchase steroids from HARRIS, approximately totaling 30cc of testosterone. WENGER claimed he began to feel normal after a couple of weeks and did not take any additional steroids after he finished the quantity provided by HARRIS. Notably, by WENGER's own admission he consumed steroids for a short period of time in the year 2021. [. . .]

First, during Wenger's March 23, 2022 interview with the FBI, he did not say that he purchased "steroids from Harris, approximately 30cc of testosterone." What Wenger did say was:

So I hit up my buddy Dan Harris. And I said, [. . .] Should I do hormone replacement therapy or what? And he's like basically, "All you need is [. . .] testosterone enanthate [sic] or whatever. That's what they use for TRT. And so I looked it up. And I saw that under [. . .] whatever, Title 21, as an exempted drug. And I was like "Okay. Cool. I can take it. Like, that's

awesome." So I did. [. . .] I didn't think it was illegal as it's presented [phonetic]. [. . .] Like I said, I didn't think – I thought it was exempt from everything."
(*See Motion to Suppress Def. Ex. 6*, Transcript, at DCW-4000022-23 & DCW-4000024.

When SA Zoback again asked Wenger what Harris sold him, Wenger responded, "It was just – all I know is testosterone enanthalate. Enanthatlate. Yeah [intelligible] – testosterone enanthalate. [. . .] I got 30 cc's for me, total. I took it all pretty fast. I felt normal again. That was it. Def. Ex. 7, Audio Recording, at 18:30-39. SA Kular's false information may be attributable to errors in the transcript of the recorded interview: Wenger said "enanthalate" not "enanthate." Also, Wenger said "testosterone enanthalate" not "testosterone and enanthate".
(See *Motion to Suppress Def. Ex. 6 & Def. Ex. 7*, *Audio Recording, at 18:30-39*.

Regardless of the origin of the falsity, the Court was nonetheless misled to believe that Wenger admitted to buying "steroids," namely "testosterone" from Harris.

Second, SA Kular's assertion that Testosterone Enanthate is a Schedule III narcotic under Section 812 of the Controlled Substances Act, was simply incorrect. Testosterone Enanthate produced by certain manufacturers was exempt from the Controlled Substances Act (meaning one does not need a prescription to use it). See (*Motion to Suppress Def. Ex. 8*, DEA List of Exempt Anabolic Steroids, U.S. DOJ-DEA, Diversion Control Act, Drug and Chemical Evaluation Section. Exempt Anabolic Steroids (21 CFR § 1308.33 and 21 CFR § 1308.34), dated November
5, 2020.

This is something a simple internet search would have revealed.
Had SA Kular informed the federal Judge that 1) Wenger looked up Testosterone Enanthate and found it was an exempt medication, and 2) Testosterone Enanthate was, in fact, exempt, probable cause to believe that Wenger was involved in distribution of controlled substances would have been negated.

Interestingly, it seems that the government did some research into the issue of testosterone enanthate and cypionate between the drafting of federal search

-20-

warrant #1 and federal search warrant #2. (*Exhibit 1; paragraphs 30-33*). However, despite learning that some substances are exempt, the government appears to have failed to consider that Wenger's testimony was truthful – he did not take steroids. He took a lawfully exempt medication during the period he was sick with COVID-19.

## C. The Particularity Requirement

The Fourth Amendment requires that search warrants particularly describe the place to be searched and the items to be seized. *Kentucky v. King*, 563 U.S. 4562, 459 (2011) ("[A]warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." (internal quotation marks omitted)).

The particularity requirement is especially important when a warrant authorizes the search of digitally stored information. *United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013). Because digital devices can contain enormous amounts of information and relevant evidence can be stored in any location, the Fourth Amenment requires warrants for computer searches to "affirmatively limit the search to the evidence of specific...crimes or specific types of material." *United States v. Otero*, 563 F.3d 1127, 1131-32 (10th Cir. 2009); *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (finding that warrant lacked sufficient particularity for search of electronic media where it failed to link the items to be searched and seized to suspected criminal activity).

In this case, the second federal warrant lacked particularity as to the search of the electronic information stored in the phones. Instead, the warrant is overbroad and not narrowly tailored. In its failure to be particular, the warrant creates the kind of "dragnet" scenario that courts have sought to limit.

## D. The Phone Records Exceeding the Limitations of the Warrant Should Be Suppressed

If the "scope of the search exceeds that permitted by the terms of a validly issued warrant. . . [the search and any] subsequent seizure [are] unconstitutional." *Horton v. California*, 496 U.S. 128, 140 (1990). As the Ninth Circuit recently recognized, the nature of electronic data storage "creates a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *United States v. Comprehensive Drug Testing Inc.,* 621 F.3d 1162, 1176 (9th Circ. 2010)(en banc).

As evidenced by the Supreme Court's decisions in *Riley v. California*, 134 S.Ct. 2474 (2014) (finding that police may not search cell phone incident to arrest), the pendulum seems to be swinging towards greater privacy protections for digital devices and the information therein. And in *Riley*, the Supreme Court recognized that treating a cell phone as an ordinary "container" does not make a lot of sense. (I*d.* at 2491) (Treating a cell phone as a container whose contents may be searched incident to an arrest is a bit strained as an initial matter.").

In this case, the government had a warrant before it that allowed them to view phone records from the period of 2019 to 2021. Puzzlingly, the government then requested phone records from T-Mobile from 2019 to 2023 – unquestionably outside the time permitted by the warrant. Given that the government has exceeded the scope of the warrant the phone records from T-Mobile must be suppressed.

## IV.   A FRANKS' HEARING IS NECESSARY

A Franks hearing determines "the validity of the affidavit underlying a search warrant." *United States v. Kleinman,* 880 F.3d 1020, 1038 (9th Cir. 2017). To obtain a Franks hearing, a defendant must make a substantial preliminary showing that: (1) "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "the false or misleading statement or omission was material, i.e., necessary to finding probable

1   cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citation,
2   alteration, and internal quotation marks omitted).

3          Once the defendant makes that showing, to prevail at the subsequent
4   hearing, he must establish both prongs by a preponderance of the evidence. See
5   *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005).
6   Deliberate or reckless omissions can constitute false statements for the purposes
7   of a *Franks* inquiry. See *Franks v. Delaware*, 438 U.S. 154 (1978); *United States*
8   *v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) (concluding that officer omitted
9   material information when proffering his conclusion about an image based on an
10  incomplete and misleading description of the image). (See also *Franks' Motion*
11  filed previously).

12         In this case, affiants Wallace and Kular either intentionally or recklessly
13  made statements/omissions that were necessary to find probable cause. Wallace
14  and Kular made false statements in the state warrants as outlined above and, in the
15  *Motion to Suppress and Motion for a Franks' Hearing*.  Kular omitted in his
16  previous warrant, federal warrant #1, that some "steroids" are in fact exempt or in
17  other words legal.  This is underscored by Kular's inclusion of this fact in federal
18  warrant #2.

19         Kular also omitted from his warrant that Wenger never admitted to using
20  steroids, but in fact only admitted to using an exempt medication that was legal.
21  These statements were material in that they were relied upon by both the state and
22  the federal government to obtain warrants they would not have otherwise been
23  able to obtain. The Defense has met the requirements to demonstrate a sufficient
24  prima facie case for a Franks' Hearing as to state warrant #1, federal warrant #1
25  and federal warrant #2. (See *Motion for Franks' Hearing*).

26  \ \ \

27  \ \ \

28

DEFENDANT WENGER'S NOTICE OF MOTION AND MOTION TO SUPPRESS THE FBI WARRANT
DATED JULY 24, 2023 & NOTICE OF MOTION AND MOTION FOR HEARING PURSUANT TO FRANKS
V. DELAWARE; MEMORANDUM OF POINTS AND AUTHORITIES

## V. <u>CONCLUSION</u>

For the reasons stated herein, all evidence obtained as a result of unlawful searches related to the July 24, 2023, warrant must be suppressed and a Franks' Hearing should be heard to discover the depth of the falsity put forth by both Wallace and Kular. It is therefore respectfully requested that the instant motion to suppress evidence and for a Franks hearing be granted.


DATED:  August 13, 2024                    SEKI, NISHIMURA & WATASE, PLC



                                           By /s/ *Nicole R. Castronovo*
                                           NICOLE R. CASTRONOVO
                                           Attorney for Defendant
                                           Devon Christopher Wenger