UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEVON CHRISTOPHER WENGER,<br><br>Defendant. | Case No. 23-cr-00269-JSW-3<br><br>**ORDER DENYING MOTION TO RECONSIDER; SUPPLEMENTAL MOTION TO SUPPRESS**<br><br>Re: Dkt. Nos. 186, 213 |

Pending before the Court are several motions to suppress filed by Defendant Devon Wenger. In *United States v. Amiri et al.*, 23-cr-269-JSW (the "-269 Case"), Wenger seeks reconsideration of the Court's prior order denying Wenger's motion to suppress and motion for a *Franks* hearing. (-269 Case, Dkt. No. 180.) In *United States v. Harris et al.*, 23-cr-268-JSW (the "-268 Case"), Wenger moves the Court to reconsider its ruling in the -269 Case and to suppress the fruits of three warrants in the -268 Case. (-268 Case, Dkt. Nos. 114, 130.) Wenger seeks to suppress the fruits of an additional warrant via "supplemental motions" in both actions.

This Order addresses the motions in the -269 Case. A separate order will issue in the -268 Case.

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for resolution without oral argument. *Cf.* Civ. L.R. 7-1(b). For the following reasons, the Court DENIES the motions.

## BACKGROUND

**A.   The Charges Against Wenger.**

In the -268 Case, the United States alleges that Wenger violated 21 U.S.C. sections 846, 841(a)(1), and 841(b)(1)(E)(i) – Conspiracy to Distribute and Possess with Intent to Distribute

1  Anabolic Steroids by conspiring with co-defendant Daniel Harris to deliver anabolic steroids to
2  another officer identified as "B.M." (-268 Case, Dkt. No. 1, Indictment, Count One.) The United
3  States further alleges that Wenger violated 18 U.S.C. section 1519 – Destruction, Alteration, and
4  Falsification of Records in Federal Investigations by deleting messages from his cell phone
5  relating to the alleged steroid conspiracy. (*Id.*, Count Four.)

In the -269 Case, the United States alleges that Wenger violated 18 U.S.C. section 241 – Conspiracy Against Rights by conspiring with co-defendants Morteza Amiri and Eric Rombough to interfere with the constitutional rights of residents of Antioch, California through threats and use of unreasonable force. (-269 Case, Dkt. No. 1, Indictment, Count One.) The United States further alleges that Wenger violated 18 U.S.C. section 242 – Deprivation of Rights Under Color of Law by shooting an individual, "D.S.," with a 40 mm less lethal launcher. (*Id.*, Count Eight.)

Wenger denies the charges.

**B.   Procedural History in the -269 Case.**

Wenger was indicted in the -269 Case in August 2023. (-269 Case, Dkt. No. 1.) Wenger's original attorneys, Ms. Fields and Mr. Fischer, filed a motion to suppress evidence, motion for separate trial, and motion to sever counts on Wenger's behalf prior to the initial law and motion deadline. (Dkt. Nos. 103, 104, 112.) Wenger's current counsel in the -269 Case, Ms. Castronovo, filed a motion for hearing pursuant to *Franks v. Delaware*. (Dkt. No. 109.) The Court denied the motions after a hearing and after allowing additional briefing regarding the suppression motion. (Dkt. Nos. 160, 180.) The prior motion to suppress and motion for a *Franks* hearing raised the same issues currently before the Court.

Wenger filed a motion to reconsider, which the Court denied for failure to seek leave. (Dkt. Nos. 176, 177.) Wenger then filed a motion for leave to file a motion for reconsideration and a motion to dismiss. (Dkt. No. 181.) The Court granted the motion for leave. (Dkt. No. 183.)

Wenger filed a motion to dismiss Count One and for a *Bourjaily* Hearing, which the Court struck as outside the scope of the Court's order granting leave. (Dkt. Nos. 185, 188.) Wenger filed a motion to reconsider the Court's order striking the motion, but he failed to explain why reconsideration was appropriate. (Dkt. No. 198.) The Court accordingly denied the motion to

reconsider. (Dkt. No. 200.)

Wenger also filed a motion to dismiss the Indictment or, alternatively, for a change of venue. (Dkt. No. 187.) The Court denied the motion in its entirety. (Dkt. No. 232.)

### C. Procedural History in the -268 Case.

The Indictment in the -268 Case was filed in August 2023. Wenger filed a motion to suppress in October 2024 and a supplemental motion to suppress in December 2024. (-268 Case, Dkt. Nos. 114, 130.)

Wenger moved for permission to join the Motion for Reconsideration and Motion to Dismiss from the -269 Case. (-268 Case, Dkt. No. 121.) The Court granted the request. (-268 Case, Dkt. No. 122.) Defendant's reply brief in support of his Motion for Reconsideration is thus styled as a "Joint Reply." (-269 Case, Dkt. No. 206.)

### D. The Challenged Warrants.

In the pending motions, Wenger challenges four warrants: (1) the March 22, 2022 warrant issued by the Superior Court of Contra Costa County (the "State Court Warrant"); (2) the May 19, 2023 federal warrant (the "First Federal Warrant"); (3) the July 24, 2023 federal warrant (the "Second Federal Warrant"); and (4) a November 4, 2024 warrant (the "Third Federal Warrant"). All of the warrants authorized search of Wenger's personal cell phone data. In its previous order denying Wenger's motions to suppress, the Court described the State Court Warrant, First Federal Warrant, and Second Federal Warrant in detail. (Dkt. No. 180, Order Denying Motions to Suppress and Motion for Franks Hearing, at 2:1-5:23.)

The Third Federal Warrant was issued after the Court's prior order. (Dkt. No. 229-2, Third Federal Warrant.) It authorizes search of Wenger's cell phone data for evidence of destruction, alteration, or falsification of records in violation of 18 U.S.C. section 1519. Special Agent Kular provided the affidavit in support of the warrant.

Kular explained that Wenger's cell phone was originally seized pursuant to the State Court Warrant in 2022, and he stated that "[t]he FBI was also present at the execution of that state search warrant." (*Id.* ¶ 7.) Kular noted his prior searches pursuant to the first two federal warrants. (*Id.* ¶ 11.) All three prior warrants were attached as exhibits to Kular's affidavit.

3

Kular suspected that evidence of destruction, alteration, or falsification of records may be present in Wenger's data for two reasons. First, Kular noticed that text messages relating to steroids and including Wenger were present in Harris's data but were missing from Wenger's data. (*Id.* ¶¶ 12-14.) These missing messages included one in which Harris told Wenger to "keep it hush" that he was "taking anything." (*Id.* ¶ 14.) Second, Kular found that the Axiom and Cellebrite software had identified deleted messages between Wenger and B.M. in which Wenger told B.M. that he would "pick up your stuff from Dan [Harris]" and in which B.M. told Wenger, "LETS GET FUCKING JACKEEEEEEEEEED[.]" (*Id.* ¶ 15.)

The Magistrate Judge issued the warrant and authorized the investigators to examine Wenger's data for, among other things, communications between Wenger and Harris and/or B.M. that may have been deleted. (*Id.*, Attachment B, ¶ 3.)

## ANALYSIS

### A.   Legal Standards on a Motion for Reconsideration.

District courts have "inherent authority" to reconsider orders in criminal cases. *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). The Criminal Local Rules do not directly address motions for reconsideration. However, Criminal Local Rule 2-1 indicates that Civil Local Rules shall apply in criminal cases except where they conflict with a provision of law specifically applicable to criminal cases. Accordingly, Civil Local Rule 7-9, which governs motions for reconsideration in civil cases, provides the applicable standard as it does not conflict with any provision of law specifically applicable to criminal cases.

Under Civil Local Rule 7-9, a motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment. N.D. Civ. L.R. 7-9(b)(1)-(3).

The moving party may not reargue any written or oral argument previously asserted to the Court. *Id.*, 7-9(c). "Motions for reconsideration are not 'the proper vehicles for rehashing old

4

arguments,' and are not 'intended to give an unhappy litigant one additional chance to sway the judge.' " *United States v. Brown*, No. 2:13-CR-00407-TLN, 2016 WL 6988665, at *3 (E.D. Cal. Nov. 29, 2016) (quoting *United States v. DePue*, No. 2:10-CR-109-RLH-PAL, 2013 WL 321667, at *1 (D. Nev. Jan 28, 2013)).

**B.     Wenger Fails to Identify a Basis for Reconsideration.**

Wenger contends that reconsideration is appropriate under all three prongs of Local Rule 7-9. The Government responds that Wenger does not identify any new evidence which shifts the needle, and he does not identify any manifest failures by the Court.

**1.     Disagreement with Prior Counsel Is Not a Basis for Reconsideration.**

Wenger first argues that another look at his suppression motions and request for a *Franks* hearing is warranted because his prior counsel was deficient. Wenger does not contend this argument falls into any prong of the reconsideration analysis, but rather makes an equitable argument that reconsideration is appropriate given what Wenger contends was objectively unreasonable attorney performance. Wenger argues his counsel was constitutionally deficient because they (i) ignored evidence of whistleblower retaliation; (ii) did not provide discovery materials to Wenger upon his request; and (iii) engaged in plea negotiations without Wenger's consent. The Court rejected these same arguments in its order denying Wenger's motion to dismiss. (Dkt. No. 232, at 18-19.) They do not warrant a different result here.

Counsel is constitutionally deficient if (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) the counsel's errors "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). Wenger does not identify any adverse effects of prior counsel's representation.

First, the Court permitted Wenger to file a motion to dismiss on the basis of whistleblower retaliation, thus directly addressing Wenger's concern that prior counsel did not pursue that argument. The Court found that Wenger failed to show evidence of retaliation. Prior counsel's refusal to pursue motions along those lines does not alter the outcome: without evidence of retaliation, Wenger cannot obtain dismissal or suppression on that basis. By declining to argue retaliation, prior counsel merely exercised a difference in strategy. Disagreement in strategy

5

between current and former counsel does not equate to ineffective assistance. *See Harrington v. Richter*, 562 U.S. 86, 106 (2011) (reversing grant of habeas where attorney forewent defense avenue and noting, "[t]here are . . . 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' ") (quoting *Strickland*, 466 U.S. at 689).

Second, Wenger's grievance over lack of communication with prior counsel is seemingly unattached from his motion to reconsider. Wenger has had his current counsel since May 2024 and has presumably had greater access to discovery. Yet, he does not explain how any documents provided by his current counsel and withheld by his previous counsel relate to his motions to suppress. Wenger's citation to *Maples v. Thomas*, 565 U.S. 266 (2012) is inapposite. In that case, counsel for an inmate on death row entirely abandoned their representation without leave of court, and the inmate was left in the dark for almost a year before learning that his counsel had absconded and his time to appeal his conviction had elapsed. *Id.* at 271. The Supreme Court found that the default must be set aside in the interest of justice. *Id.* Wenger's situation differs greatly: Wenger is not on death row, has been permitted to file numerous motions for suppression or dismissal, and has failed to make any factual showing of prejudice (*i.e.*, by identifying any evidence withheld by his prior counsel and which may have warranted a different result on his motion to suppress or for a *Franks* hearing).

Similarly, Wenger does not provide an explanation for how unauthorized plea negotiations relate to his motions to suppress or for an evidentiary hearing. Wenger cites only *Missouri v. Frye*, 566 U.S. 134 (2012), a case involving counsel which failed to communicate a favorable plea offer to the defendant before it expired. *Id.* at 138. Wenger does not contend that his counsel failed to communicate a favorable plea agreement, and indeed insists that he has no interest in accepting such an agreement. *Frye* does not stand for the sweeping proposition that counsel is ineffective if it does not communicate fruitless plea discussions to the defendant. In the absence of any identifiable prejudice stemming from the allegedly deficient performance of Wenger's prior counsel, equitable reconsideration is unwarranted.

For the avoidance of doubt, the Court finds that Wenger's prior counsel was adequate

6

under the Sixth Amendment. Despite raising complaints in multiple filings, Wenger has not made a factual showing of deficiency.

### 2. The Wallace Testimony Does Not Constitute New Evidence.

Wenger next argues that reconsideration is warranted because October 2024 testimony by Inspector Larry Wallace contradicts the Government's previous representations to the Court and constitutes new evidence. Wallace is the affiant who obtained the State Court Warrant. The Government responds that there are factual and legal problems with Wenger's argument, and the Court agrees.

Wenger fails to make a factual showing. He does not provide the Wallace testimony to the Court. Wenger provides only the declaration of Michael L. Rains, an attorney who solicited the testimony on behalf of a different officer in an arbitration proceeding.[1] According to Rains, Wallace collaborated with the FBI in an investigation into Pittsburgh and Antioch police officers; Wallace believed he was ordered by a judge to release a report documenting racist text messages amongst the officers; and Wallace did not receive training in the California Electronic Communications Privacy Act ("CalECPA") and thus did not seek to seal electronic data in compliance with the Act. This account is pure hearsay.

Even assuming the Court can consider the content of the testimony as described by Rains, it is unclear what about the testimony merits reconsideration. The testimony does not support Wenger's conclusion that "[c]learly, Wallace's investigation into Wenger is predicated upon an unlawful and overbroad search." (Dkt. No. 186, Mot. to Reconsider, at 10:1-2.) Wallace's testimony pertained to an officer not before the Court, not Wenger. Moreover, the testimony aligns with Wenger's previous assertions that Wallace failed to seal Wenger's phone data in compliance with the CalECPA and that Wallace worked alongside federal investigators. (*See*

---

[1] Mr. Rains' declaration was not attached to Wenger's motion for reconsideration, but the Court nevertheless considered the declaration in reaching this determination. (*See* -269 Case, Dkt. No. 187-2, Declaration of Michael L. Rains.) Mr. Rains represents former Antioch Police Officer Brock Marcotte in an appeal of his termination from the department for alleged involvement with racist texts uncovered by Wallace. (*Id.* ¶¶ 2, 23.) The Court is unaware of any involvement by Wenger in that arbitration.

Mot. to Suppress, at 18:11-20 (arguing Wallace violated CalECPA by failing to seal data); *id.* at 19:20-21:4 (arguing federal warrants were tainted by state investigation).) The Court considered those arguments and determined they did not impact the validity of the federal warrants in this action. Wenger does not provide a basis to revisit that determination.

### 3. The Joint Nature of the Law Enforcement Operation Was Previously Presented to the Court and Does Not Warrant a Different Outcome.

Wenger also contends that reconsideration is appropriate because the Government misrepresented the independence of its investigation into Wenger from the Contra Costa County District Attorney's Office. Wenger hangs his hat on the following sentence in the Court's order denying the motions to suppress: "Special Agent Thuy Zoback, of the FBI, briefed Wallace on the FBI's *parallel* investigation into Antioch police officers." (-269 Case, Dkt. No. 180, at 2:14-15 (emphasis added).) If the Court characterizes the investigations as "parallel" at the time Zoback briefed Wallace, per Wenger, then the Court must believe that the authorities did not collaborate— despite the Court using the word in its description of an FBI agent briefing a non-federal investigator. Wenger thus points to numerous documents produced in discovery which indicate collaboration between the FBI and state authorities as newly emerged facts.[2]

Wenger misreads the Court's order. The Government did not obscure the collaboration between state and federal authorities from the Court, and thus additional evidence of that collaboration does not change the calculus. The relevant question remains whether any evidence to be introduced at trial flows from constitutional defects in the state investigation. The answer remains, no.

Wenger cites to *United States v. Garcia*, 974 F.3d 1071, 1080 (9th Cir. 2020) for the proposition that the independent source doctrine does not apply when state and federal authorities

---

[2] The Court was unable to locate the documents on the docket in either the -269 Case or the -268 Case. Wenger does not provide the date on which those documents were produced to the defense so that the Court may determine whether the evidence is "new." *See* Civ. L.R. 7-9(b)(1) (requiring a party to "show reasonable diligence in bringing the motion and. . . [t]hat in the exercise of reasonable diligence, the party applying for reconsideration did not know such fact. . . at the time of the interlocutory order).

8

cooperate, and thus the Court must revisit its earlier conclusion that the state search does not taint the federal searches. The Government responds that *Garcia* addresses the "attenuation doctrine," not the "independent source doctrine," and thus does not apply.

In *Garcia*, the Ninth Circuit determined that discovery of a suspicionless search condition was not an intervening circumstance that broke the causal chain between an unlawful entry into the defendant's home and discovery of evidence leading to the revocation of his supervised release. *Id.* at 1073. The court rejected the government's argument that the fruits of the search were sufficiently attenuated from the initial unlawful entry so "as to dissipate the taint caused by the illegality." *Id.* at 1076 (quoting *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir. 2017)). The court noted that the independent source doctrine could not apply because the evidence in question was not discovered through an independent source, but "instead found *only* as a direct result of an earlier constitutional violation." *Id.* at 1080 (emphasis in original) (citing *Gorman*, 859 F.3d at 718). To the extent the attenuation doctrine and independent source doctrines were connected, the court noted that "a warrant obtained with information entirely unconnected to a Fourth Amendment violation" is an "intervening circumstance." *Id.*

Here, unlike in *Garcia*, the federal investigators obtained search warrants for the cell phone evidence at issue. The warrant applications did not mention the fruits of the prior state search into Wenger's cell phone, although they did disclose the State Court Warrant and identify that the Contra Costa County District Attorney's Office possessed the target data. As discussed in the Court's prior order denying Wenger's motions to suppress, the federal warrants were supported by probable cause sourced from lawful searches into Amiri and Harris's data. The allegedly unlawful state searches were thus not the "only" source of the subsequent searches, *see id.*; the state searches were not a source at all.

Wenger also argues for the first time that his March 23, 2022 interview with the FBI was tainted by Wallace's illegal seizure of his phone because Wenger came to the police station to collect his phone. Wenger further contends that all documents or videos provided by Wallace to the FBI regarding Wenger must be suppressed. Wenger could have raised this argument in his earlier motions and failed to do so, and it is thus waived in the -269 Case. Wenger further waives

9

the argument as to documents provided by Wallace to the FBI by failing to identify the source of those materials; to explain any privacy interest which Wenger may have possessed in the materials and which may have been violated; or to provide the materials to the Court. *Cf. United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

Even if the Court were to find that Wenger preserved his argument as to the lawfulness of the non-custodial interview, the interview is irrelevant to the validity of the warrants in the -269 Case. Kular referenced the interview only in support of probable cause for searches related to steroid possession and distribution, not conspiracy to violate civil rights or deprivation of rights under color of law. (*See* First Federal Warrant, ¶ 30.) Excising references to the interview from Kular's affidavit would not affect the lawfulness of the searches into Wenger's data relating to the charges in this action.

### 4. Omission of Statements by B.M. from the Warrant Applications Does Not Warrant Reconsideration.

Wenger contends that Kular omitted exculpatory evidence from the federal warrant applications. In particular, Wenger points to a statement by B.M. to the FBI that B.M. "did not recall speaking to Wenger about testosterone and did not know why Wenger would be speaking to anyone regarding [B.M.] ordering any type of substances." (Mot. to Reconsider, at 15:3-6.) Wenger does not explain why this statement from B.M. or this line of argument was not raised in his prior motions to suppress or for a *Franks* hearing. *See* Civ. L.R. 7-9(b)(1) (requiring a party to "show reasonable diligence in bringing the motion and. . . [t]hat in the exercise of reasonable diligence, the party applying for reconsideration did not know such fact. . . at the time of the interlocutory order). Nor does Wenger explain why this omission, which relates solely to the charges in the -268 Case, has any bearing on the -269 Case.

Assuming for the sake of argument that Wenger timely raises this issue and that it is relevant to the -269 Case, the Government has met its burden to demonstrate that it did not wrongfully omit exculpatory evidence. Search warrant applicants need not submit unreliable self-serving statements that contradict documentary evidence. *See United States v. Ritter*, 752 F.2d

435, 440 (9th Cir. 1985) (finding omission of "self-serving" denials from warrant application "probably not even negligent"). Here, B.M. had incentive to deny involvement with the steroids in order to avoid prosecution. B.M. later changed his story and testified before the grand jury that Wenger connected B.M. with Harris to obtain steroids. (Dkt. No. 193-4, at US-SC-100044.) B.M.'s earlier denials were contradicted by the messages between Harris and Wenger regarding a package for B.M. (First Federal Warrant, ¶ 28.) A lawful search of that package revealed anabolic steroids. (*Id.* ¶ 29.) In the face of contradictory documentary evidence, Wenger cannot demonstrate that Kular recklessly or intentionally misled the Magistrate Judge by omitting B.M.'s denials. *See Ritter*, 752 F.2d at 439 (noting, to be entitled to a *Franks* hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.") (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

### 5. Wenger Fails to Explain Why Alleged Selective Prosecution Merits Reconsideration.

Wenger includes substantial argument relating to alleged selective prosecution in retaliation for whistleblowing. Wenger does not explain why this line of argument warrants reconsideration of his motions to suppress and for a *Franks* hearing, and his motion is denied on that basis. The Court further denies Wenger's claims that prior counsel was constitutionally defective or that the prosecution against Wenger is retaliatory. (*See* Dkt. No. 232, Order Denying Wenger's Motion to Dismiss Based Upon Prosecutorial Misconduct and Ineffective Assistance of Counsel; Dkt. No. 200, Order Denying Motion for Leave to File Motion for Reconsideration.)

### 6. Wenger Does Not Show *Graham* or *Brady* Violations.

Wenger claims that the Government violated *Graham v. Connor*, 490 U.S. 386 (1989) and *Brady v. Maryland*, 373 U.S. 83 (1963). He does not explain why these arguments merit reconsideration of the Court's prior orders, and his motion is denied on that basis.

Wenger's *Graham* arguments are made in passing and without any support. The Government responds that Wenger's statements after the use of force are probative of his intent at the time of using the force, and Wenger does not address this argument in his reply. Without more

from Wenger, the Court has nothing to analyze. Wenger's motion is denied on this basis as well.

Wenger claims that the Government violated *Brady* by failing to disclose "critical body-worn camera (BWC) footage and interviews with officers involved in Count 8." (Mot. to Reconsider, at 15:28-16:1.) Wenger states that the Government did not question witness Evans about the use-of-force incident at issue, despite Evans' grand jury testimony on other topics. The Government responds that it is unable to determine what evidence Wenger contends it withheld. Wenger does not elaborate on reply. Without more from Wenger, the Court is unable to determine whether the Government withheld potentially exculpatory evidence. Wenger's motion is denied on this additional basis.

### 7. Wenger Does Not Identify Constitutional Arguments Overlooked by the Court.

Wenger does not identify any specific constitutional claims which the Court overlooked in its prior ruling. Although Wenger disagrees with the Court's conclusions, the Court addressed the merits of Wenger's constitutional arguments even after noting that his suppression motions were moot. (Dkt. No. 180, at 7-10.) The Court found that the State Court Warrant was irrelevant; that the First and Second Federal Warrants were supported by probable cause; and that the First and Second Federal Warrants were sufficiently specific. (*Id.*) Wenger may not re-argue his previous motions. *See Brown*, 2016 WL 6988665, at *3 (holding motions for reconsideration are not "intended to give an unhappy litigant one additional chance to sway the judge.").

### C. The Court Denies as Moot the Supplemental Motion to Suppress Evidence Obtained from the Third Federal Warrant in the -269 Case.

The Government continues to represent that "it will not use records from any search of Wenger's phone, or evidence derived from any search of Wenger's phone, in its case-in-chief at trial." (-269 Case, Opp. to Suppl. Mot. to Suppress, at 5:15-19.) This includes information obtained from the Third Federal Warrant. Wenger does not respond to this argument.

A motion to suppress illegally obtained evidence is mooted if the Government does not introduce the evidence or its derivatives at trial. *United States v. Kahre*, 737 F.3d 554, 565 (9th Cir. 2013). Because the Government will not use the fruits of the Third Federal Warrant at trial in

the -269 Case, suppression is unwarranted.

## CONCLUSION

For the foregoing reasons, the Motion for Reconsideration and Supplemental Motion to Suppress are denied.

**IT IS SO ORDERED.**

Dated: January 10, 2025

_____
JEFFREY S. WHITE
United States District Judge