ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov
    Alexandra.Shepard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MORTEZA AMIRI and <br> DEVON CHRISTOPHER WENGER, <br><br> Defendants. | Case No. CR 23-00269 JSW <br><br> **UNITED STATES' TRIAL MEMORANDUM** <br><br> Pretrial Conference: February 10, 2025 <br> Trial Date: March 3, 2025 <br> Court: Hon. Jeffrey S. White |

The United States files this memorandum to describe certain legal and evidentiary issues that may arise during the course of trial, including (A) the use of training and policy evidence; (B) the admissibility of the United States' proposed use-of-force experts; (C) the use of so-called "good act" evidence; and (D) the scope of cross-examination for the defendants, if they choose to testify.

//

//

## I. Background

### A. *Charges*

In Count One, Amiri and Wenger are charged with Conspiracy Against Rights, in violation of 18 U.S.C. § 241. Amiri and Wenger are also charged with Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242, in Counts Two (Amiri), Three (Amiri), Four (Amiri), Five (Amiri), and Eight (Wenger). Finally, in Count Nine, Amiri is charged with Falsification of Records, in violation of 18 U.S.C. § 1519.

### B. *Statutory Background*

To prove a violation 18 U.S.C. § 241 (Conspiracy Against Rights), the United States must prove that (1) there was an agreement between two or more persons to injure, oppress, threaten, or intimidate one or more persons in the free exercise or enjoyment of any right or privilege secured to them by the Constitution or laws of the United States, and (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose. 18 U.S.C. § 241. Here, the specific constitutional right at issue is the right "to be free from the use of unreasonable force by a law enforcement officer." Dkt 1, ¶ 10. *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[W]e analyze[] the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out."). Section 241 does not require proof of an overt act. *United States v. Skillman*, 922 F.2d 1370, 1376 (9th Cir. 1990).

To prove a violation of 18 U.S.C. § 242 (Deprivation of Rights), the United States must prove that (1) the defendant acted under color of law; (2) the defendant deprived an individual of a Constitutional right, in this case, the right to be free from unreasonable seizures, which includes the right to be free from a police officer's use of unreasonable force; and (3) the defendant acted willfully. 18 U.S.C. § 242; *United States v. Lanier*, 520 U.S. 259, 264 (1997); *United States v. Classic*, 313 U.S. 299, 326 (1941). A defendant's use of force violates the Fourth Amendment if it is objectively unreasonable under the totality of the circumstances. *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) ("In assessing a claim of excessive force, courts ask whether the officers' actions are 'objectively reasonable'

in light of the facts and circumstances confronting them.").

A defendant acts willfully if he acts voluntarily and intentionally with the knowledge that his conduct was unlawful. *Bryan v. United States*, 524 U.S. 184, 191–92, 196 (1998). In this case, it means that the defendant used force knowing that the force he used was unjustified. *Screws v. United States*, 325 U.S. 91, 106 (1945) ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution. When they so act they at least act in reckless disregard of constitutional prohibitions or guarantees.").

To prove a violation of 18 U.S.C. § 1519 (Falsification of Records), the United States must prove (1) the defendant knowingly altered, destroyed, concealed, or falsified a record, document, or tangible object, and (2) the defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States. 18 U.S.C. § 1519. Omissions of material facts from documents or records, if done intentionally and with the requisite state of mind, can establish a violation of § 1519. *United States v. Singh*, 979 F.3d 697, 706 (9th Cir. 2020). The defendant need not know that the matter in question falls within the jurisdiction of a federal department or agency. *United States v. Gonzalez*, 906 F.3d 784, 794-96 (9th Cir. 2018)

**II.    Discussion**

*A.   Training and Policies*

The United States will seek to introduce evidence of the Antioch Police Department's policies, procedures, and practices relating to officers' use of force, as well as evidence of the use-of-force training that the defendants received. This evidence may include testimony from trainers, supervisors, and other officers who are familiar with APD's policies, trainings (as to the use of police canines, use of less lethal devices, and other use of force principles), and standards of conduct, as well as records documenting the training or other remediation that the defendants' received, APD policy and procedure manuals, and materials used to train officers on use of force principles.[1]

---

[1] As described in more detail below, this evidence may also include expert testimony.

USA TRIAL BRIEF
23-CR-00269 JSW

This evidence is admissible for the purpose of establishing that the defendants' use of excessive force was "willful." As described above, 18 U.S.C. § 242 makes it a crime for any person acting under color of law to "willfully" deprive a person of a constitutional right. As the Seventh Circuit explained in the context of a police officer charged with violating section 242 for using unreasonable force, this means that, to act willfully, a defendant must "[know that the] force [i]s not reasonable and use[] it anyway." *United States v. Proano*, 912 F.3d 431, 442 (7th Cir. 2019).

Evidence that the defendant was properly advised of use of force standards through training, remediation, and policy is relevant to proving that he acted willfully. Courts regularly admit such evidence in excessive force cases to prove willfulness because it demonstrates that the defendant as aware of the rules regarding use of force and consciously chose to ignore them. *Proano*, 912 F.3d at 439 ("If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully."); *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (training and procedures evidence was "relevant to show that Rodella knew that his pursuit of Tafoya was unlawful").

Although policy and training evidence is highly probative of the issue of willfulness, it may not, on the other hand, be used to prove that the defendants' force was objectively reasonable or unreasonable. "This is because the Fourth Amendment, not departmental policy, sets the constitutional floor." *Proano*, 912 F.3d at 439. Accordingly, when policy and training evidence is offered in an excessive force prosecution to establish an officer's willfulness, courts recommend issuing a cautionary instruction clarifying to the jury that such evidence is relevant to the willfulness element only, and not to the deprivation-of-rights element. *See, e.g.*, *Proano*, 912 F.3d at 441; *Rodella*, 804 F.3d at 1338. The parties have proposed such an instruction here.

B. *Proposed Expert Testimony of Ken Wallentine and Steve Ijames*

On October 31, 2024, the United States provided notice that it intended to elicit the expert testimony of Ken Wallentine, who currently serves as the Chief of the West Jordan (Utah) Police Department, and Steve Ijames, who previously served as the Assistant Chief of the Springfield (Missouri) Police Department. Wallentine and Ijames will testify regarding police policy, training, and

procedure with respect to canines (Wallentine) and less-lethal 40mm launchers (Ijames), and whether the defendants' conduct is consistent with the training and policies provided by the Antioch Police Department and/or national policing standards.

The proposed testimony of both Wallentine and Ijames is admissible under Federal Rule of Evidence 702.[2] "To be admissible, expert testimony must (1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.), opinion amended on denial of reh'g, 246 F.3d 1150 (9th Cir. 2001). *See also* Fed. R. Evid. 702 (expert testimony admissible when it will "assist the trier of fact to understand the evidence or to determine a fact in issue").

"[I]n excessive force cases, expert testimony is routinely allowed." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 940 (N.D. Ill. 2006). *See also United States v. Asencio-De Leon*, 828 F. App'x 393, 395 (9th Cir. 2020) ("[Expert]'s testimony could have helped the jury understand the options available to agents in similar situations, which in turn could have helped the jury decide whether the agents' use of force was reasonable or excessive."). This is so because—as described above—a defendant's compliance with his training and policy is relevant to determining willfulness, and "a lay juror would not know [the relevant] practices and procedures regarding the use of force and whether [the defendants'] actions were consistent with those practices and procedures." *Rivera v. Ring*, 810 F. App'x 859, 863 (11th Cir. 2020) (unpublished). Therefore, "an expert may testify about applicable professional standards and the defendants' performance in light of those standards." *Richman*, 415 F. Supp. at 945. *See also Ochoa v. Cnty. of Kern*, 628 F. Supp. 3d 1006, 1018 (E.D. Cal. 2022) ("In accordance with Ninth Circuit standards, Plaintiff's expert may testify regarding general police policies and professional standards of practice.").

The United States will not, however, offer witness testimony that concludes that the defendants' conduct was unreasonable or violated the Fourth Amendment. The Federal Rules of Evidence do "not allow a witness to give legal conclusions." *United States v. Williams*, 343 F.3d at 435; *see also id.* ("On

---

[2] Neither defendant has moved to exclude or limit Wallentines and Ijames's proposed testimony.

USA TRIAL BRIEF
23-CR-00269 JSW

the other hand, the court erred under rule 704(a) by allowing the officers' testimony about the reasonableness of the shooting."). *See also Asencio-De Leon*, 828 F. App'x at 395 ("Whether the agents used excessive force was an ultimate issue of law on which Soto could not opine."); *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (upholding exclusion of testimony as to "reasonableness" of officer's actions because it was a legal conclusion).

### C. "Good Act" Evidence is Inadmissible

The United States anticipates that the defendants may seek to elicit testimony regarding purportedly non-criminal conduct—specifically, additional instances during which they used force as police officers, and for which they are not being prosecuted. To the extent such evidence or argument is offered for the purpose of showing that the defendants did not commit the crimes charged in the Indictment, it should be excluded. "A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions." *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955). *See also United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on [other] specific occasions."); *Diaz v. Aberts*, No. CIV.A. 10-5939, 2013 WL 2322485, at *9 (E.D. Pa. May 28, 2013) ("While a blemish-free disciplinary record is laudable, it is not evidence of a correction officer's intent and state of mind at any given moment in time.").

Moreover, to the extent that defendants offer any opinion testimony regarding pertinent character traits, *see* Fed. R. Evid. 404(a), on "cross-examination, inquiry is allowable into relevant specific instances of conduct," Fed. R. Evid 405(a). Thus, if the "defendant[s] introduce character witnesses to provide an opinion that [they are] law-abiding, peaceful and or [have] integrity, or has a reputation for the same, the Government, may, on cross-examination, ask the witnesses about specific instances where defendant[s] did not act in conformity with those character traits," including by "posing questions to the character witnesses as to their knowledge about [the defendants'] use of unnecessary violence or excessive force." *United States v. Krug*, No. 1:15-CR-00157 RJA, 2019 WL 336568, at *5 (W.D.N.Y. Jan. 28, 2019).

### D. Cross-Examination of Defendants

The United States anticipates that one or both defendants may elect to testify. "[O]nce a

defendant takes the stand and testifies in his own behalf, his credibility may be impeached and his testimony assailed like that of any other witness." *United States v. Higginbotham*, 539 F.2d 17, 24 (9th Cir. 1976). "The range of evidence that may be elicited for the purpose of discrediting a witness is very liberal," and may include "subjects not strictly relevant to the testimony given by the witness on direct examination." *United States v. Palmer*, 536 F.2d 1278, 1282 (9th Cir. 1976). And "once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979).

Here, if the defendants elect to testify, the United States anticipates that cross-examination may cover topics that may not otherwise be admissible, such as Amiri's conspiracy to commit wire fraud and wire fraud convictions; evidence of other crimes (such as Amiri's admission that he helped cover-up an off-duty shooting by another officer); and the defendants' use of racial and homophobic slurs to refer to members of the community. These topics are directly relevant to the defendants' credibility and their intent to commit the crimes charged in the Indictment.

DATED: January 27, 2025

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA SARGENT
ALEXANDRA SHEPARD
Assistant United States Attorneys