CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) Case No. 23-CR-00269 JSW-3 |
|---|---|
| Plaintiff, | ) **UNITED STATES' OPPOSITION TO DEFENDANT WENGER'S MOTION FOR THE ISSUANCE OF A SUBPOENA FOR RECORDS** |
| v. | |
| (2) DEVON CHRISTOPHER WENGER, | |
| Defendant. | |

Defendant Devon Christopher Wenger's motion for the issuance of a subpoena for records (Dkt. No. 459) should be denied.

## I.  Background

In Count One, Devon Wenger is charged with violating 18 U.S.C. § 241 (Conspiracy Against Rights). The Indictment alleges that, between February 2019 and March 2022, Wenger—together with Morteza Amiri and Eric Rombough, and others "known and unknown" to the Grand Jury— agreed to "injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise and

enjoyment of rights secured to them by the Constitution or laws of the United States," and specifically, the right "to be free from the use of unreasonable force by a law enforcement officer." Dkt. No. 1, ¶¶ 10, 90. The Indictment alleges that the defendants deployed force as "'punishment' to subjects beyond any punishment appropriately imposed by the criminal justice system" and agreed with each other "to carry out violent acts . . . even where the force was excessive." *Id.* ¶¶ 12, 18. The Indictment also alleges that, in order to "further perpetuate the scheme," the defendants "concealed and hid . . . the acts done and purpose of the acts done in furtherance of the scheme" and "authored police reports containing false and misleading statements to suggest that the force they used was necessary or justifiable." *Id.* ¶ 19.

Consistent with those allegations, Wenger is charged in Count Eight (which alleges unreasonable use of force, in violation of 18 U.S.C. § 242), in which D.S. is a victim identified in the Indictment. The elements of § 241 are that "there was an agreement between two or more persons to injure, oppress, threaten, or intimidate one or more persons in the free exercise or enjoyment of any right or privilege secured to them by the Constitution or laws of the United States," and that "the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose." *See* Dkt. No. 378, at 22. The elements of § 242 are that "the defendant acted under color of law," that "the defendant deprived an individual of a Constitutional right, in this case, the right to be free from unreasonable seizures, which includes the right to be free from a police officer's use of unreasonable force," and that "the defendant acted willfully." *Id.* at p. 24. "The decision by a police officer to use force shall be evaluated from the perspective of a reasonable officer in the same situation, based on the totality of the circumstances known to or perceived by the officer at the time rather than with the benefit of hindsight." *Id.* at 26.

On May 20, 2025, defendant filed a motion for the issuance of a subpoena for records regarding victim D.S. Dkt. No. 459. The face of the requested subpoena would command the "Bureau of Security and Investigative Services" in Sacramento, CA to produce:

> "(1) All records in possession of BSIS for [D.S.], BSIS License# []; (2) All applications submitted to BSIS for a Security Guard License by [D.S.], BSIS Lic. []; (3) A copy of [D.S.]'s BSIS Security Guard License # []; (4) All records in possession of BSIS for [D.S], BSIS License# [] between 09/22/17 and 09/30/21; (5) All training records and/or cerificates [*sic*] of training for [D.S], BSIS License# [] between 09/22/17 and 09/30/21; (6) All complaints made against [D.S.], BSIS License #[] between 09/22/17 and 09/30/21; (7) All disciplinary records

concerning [D.S.], BSIS License# []; (8) Copies of the Department of Consumer Affairs - Bureau of Security and Investigative Services - Security Guard Guides for 2017, 2018, 2019, 2020, and 2021; (9) Copies of the Department of Consumer Affairs - Bureau of Security and Investigative Services - Powers to Arrest and Appropriate Use of Force Training Manuals for 2017, 2018, 2019, 2020, and 2021."

Dkt. No. 459-2, at 1-2. The attachment to the exhibit requests the same documents, *see* Dkt. 459, at 8, but defines "you," the recipient of the subpoena, as "the World Professional Association for Transgender Health and its predecessor organizations and other names by which it has been known, including but not limited to the Henry Benjamin International Gender Dysphoria Association," *see* Dkt. 459, at 5.

Defendant's motion asserts that the material is "directly relevant to the issues in this case.," and that "[w]ithout these documents, Defense will be unable to fully present its case." Dkt No. 459, at 3.

## II.   Legal Standard

In order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 698–700 (1974) (further describing requirements as "(1) relevancy; (2) admissibility; (3) specificity").

Conclusory allegations of relevance are insufficient to meet the subpoena-seeking party's burden, *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), and the "specificity and relevance elements require more than the title of a document and conjecture as to its contents," *United States v. Thompson*, No. CR19-159RSL, 2022 WL 834025, at *2 (W.D. Wash. Mar. 21, 2022) (quotation marks and citation omitted). Moreover, the documents sought cannot be "otherwise procurable reasonably in advance of trial by exercise of due diligence" and the subpoena cannot be "intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699; *see also Thompson*, 2022 WL 834025, at *2 ("[A] Rule 17(c) subpoena cannot be issued upon a mere hope that the desired documents would produce favorable evidence." (quotation marks and citation omitted)). That subpoenaed material is relevant for impeachment purposes "is generally insufficient to justify the pretrial production of documents." *United*

1  *States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981); *accord United States v. James*, 980 F.2d 739 (9th Cir. 1992) ("Impeachment alone is insufficient to justify the pretrial production of documents.").

Rule 17(c)(2) confers discretion on the district court to quash a subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "A district court must grant a motion to quash a pretrial subpoena under Rule 17(c) unless the moving party can meet the [*Nixon*] requirements[.]" *In re Subpoena Issued to STF Prods., Inc., Producer of Am.'s Most Wanted, Am. Fights Back*, No. 06-10591, 2006 WL 3697679, at *1 (9th Cir. Dec. 15, 2006).

"After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." FRCP 17(c)(3).

**III.    Argument**

   A.   <u>D.S.'s Prior Employment and Related Policies Are Irrelevant to Questions Before the Jury</u>

In the first place, the defendant's requested subpoena provides no explanation at all as to the relevance of or need for the requested materials. Dkt. No. 459. On its face, the requested subpoena appears to request information that is irrelevant to questions before the jury: whether Wenger joined an agreement between two or more persons to deprive one or more persons of the right to be free from a police officer's use of unreasonable force, whether Wenger's use of force against D.S. was unreasonable (evaluated from the perspective of a reasonable officer in the same situation, based on the totality of the circumstances known to or perceived by the officer at the time rather than with the benefit of hindsight), and whether Wenger acted willfully.

The content of the requested records, which relate to a security guard license and include things such as training materials, certificates, and use of force policies, at best appear only go to *D.S.*'s, not Wenger's, state of mind at the time D.S. encountered Wenger and his fellow police officers. But this is irrelevant to the elements at hand: there is no evidence or suggestion that Wenger, or any reasonable officer on the scene, had any knowledge that D.S. had had specific training or had been employed as a security guard. It is also highly prejudicial and confusing under Federal Rule of Evidence 403 because

the defense could use it to suggest to the jury that D.S.'s actions should somehow be evaluated by a different standard, or that D.S.'s own state of mind is somehow pertinent to Wenger's decision-making. Given these problems, this Court should not admit such evidence. The defendant's motion lacks any support or argument for any proper purpose for which these records could be used.

Because the defendant has not demonstrated the relevance of the material to his claims or defenses, the motion should be denied.

### B. The Request for Complaints and Disciplinary Records Constitutes a Fishing Expedition

Two requests in the body of the subpoena are particularly concerning: the request for "complaints" made against D.S., and the request for "disciplinary records" made against D.S. While D.S.'s application and employment as a security guard are apparent from the materials provided by the government in discovery, the materials do not appear to reference any complaints or disciplinary actions. "The requirement of 'specificity' under Rule 17 is not satisfied if the defendant does not know what the evidence consists of or what it will show." *United States v. Johnson*, No. CR 94-0048 SBA, 2008 WL 62281, at *2 (N.D. Cal. Jan. 4, 2008). Because the defendant has not provided a basis to believe there were complaints or disciplinary action, much less that the underlying facts would go to D.S.'s truthfulness or untruthfulness,[1] FRE 608(b), the listing of these two items constitutes a "fishing expedition." "Rule 17(c) was not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (quotation marks omitted).

Because the defendant has not demonstrated a basis for the material he seeks, the motion should be denied.

### C. D.S. Should Be Notified and Allowed to Respond Before Issuance of the Subpoena

Rule 17(c)(3), which was designed to implement the Crime Victims' Rights Act's guarantee of a victim's "dignity and privacy," Fed. R. Crim. P. 17, advisory committee note to 2008 amendment; *see also* 18 U.S.C. § 3771(a)(8), provides that "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order." Fed. R.

---

[1] In any event, impeachment alone is insufficient justification for a subpoena. *Fields*, 663 F.2d at 881.

Crim. P. 17(c)(3) ("Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.").

This Rule applies given the personal information sought by the requested subpoena, and to the extent this Court is inclined to issue the defendant's requested subpoena, the victim D.S. should be notified beforehand. The defendant has identified no extraordinary circumstances that differentiate this case from others.

D. *Errors in the Subpoena Require it to be Amended Before Issuance*

Finally, the subpoena appears to contain errors that make it unclear to whom it is directed. While the face page directs the subpoena to the Bureau of Security and Investigative Services, the attachment defines "you" as "the World Professional Association for Transgender Health and its predecessor organizations and other names by which it has been known, including but not limited to the Henry Benjamin International Gender Dysphoria Association."[2]

Even if the Court were inclined to allow the defendant's requested subpoena, it requires revisions and corrections prior to service.

IV.  **Conclusion**

Wenger's Motion for Issuance of a Subpoena for Records should be denied.

DATED: May 27, 2025                                Respectfully submitted,

                                                   CRAIG H. MISSAKIAN
                                                   United States Attorney


                                                   _____/s/_____
                                                   ERIC CHENG
                                                   AJAY KRISHNAMURTHY
                                                   ALETHEA SARGENT
                                                   Assistant United States Attorneys

---

[2] This may be a simple typographical error, but it is curious given the government's understanding that D.S. uses female pronouns. To be clear, any prior or current association D.S. might have with a transgender health organization is completely irrelevant to the proper issues before the jury.