CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DEVON CHRISTOPHER WENGER, <br><br> Defendant. | Case No. 23-CR-00269 JSW-3 <br><br> **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT DEVON WENGER'S MOTION IN LIMINE 1** <br><br> Pretrial: June 30, 2025 <br> Trial: August 4, 2025 <br> Court: Honorable Jeffrey S. White |

U.S. RESPONSE TO WENGER MOT. IN LIMINE 1
23-CR-269-JSW-3

Defendant Devon Wenger's motion to exclude the statements made by himself, Morteza Amiri, and Eric Rombough that are set forth in eight specific paragraphs of the Indictment (Dkt. 462) should be denied.  Although Wenger's motion focuses solely on the alleged prejudicial effect of these statements on the jury's assessment of Count Eight, these messages are not only evidence of Wenger's willfulness (a requisite element of Count Eight) but also directly relevant to the conspiracy charged in Count One.  As this Court has previously found, in adjudicating the defendant's motion to sever counts, *see* Dkt. 104-1, "[such] texts and photographs would be admissible in a trial solely against Wenger to show the existence of a conspiracy." Dkt. 160, at p. 7.  Specifically, Wenger's statements are party opponent admissions relevant to Counts One and Eight, and the Indictment itself provides sufficient evidence for the Court to find that statements made by codefendants Amiri and Rombough are admissible under Federal Rule of Evidence 801(d)(2)(E) as coconspirator statements.

I. **Background**

In Count One, Amiri and Wenger are charged with violating 18 U.S.C. § 241 (Conspiracy Against Rights).  The Indictment alleges that, between February 2019 and March 2022, Wenger and his co-defendants Amiri and Rombough agreed to "injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise and enjoyment of rights secured to them by the Constitution or laws of the United States," and specifically, the right "to be free from the use of unreasonable force by a law enforcement officer." Dkt. 1, ¶¶ 10, 90. Among other things, the Indictment alleges that the defendants deployed force as "'punishment' to subjects beyond any punishment appropriately imposed by the criminal justice system" and agreed with each other "to carry out violent acts . . . even where the force was excessive." Dkt. 1, ¶¶ 12, 18. The Indictment also alleges that, in order to "further perpetuate the scheme," the defendants "concealed and hid . . . the acts done and purpose of the acts done in furtherance of the scheme" and "authored police reports containing false and misleading statements to suggest that the force they used was necessary or justifiable." Dkt. 1, ¶ 19.

On May 29, 2024, the defendant sought to sever the counts against him, arguing that a trial that joined the conspiracy and use of force counts would result in "extreme prejudice." Dkt. 104-1, at p. 4.  The Court denied that motion.  The Court held that the conspiracy text messages were "close in time, within a matter of a few years, and a jury could reasonably find that they demonstrate Wenger agreeing,

planning, and encouraging other officers to engage in excessive force." Dkt. 160, at p. 6. The Court further found that, "Because direct evidence of state of mind is rarely available, Wenger's prior statements and actions may be used to support a finding of intent as to his own use of force against D.S." *Id.* The Court noted that its ruling was without prejudice to the defendant bringing to the Court in limine "specific exhibits or evidence he contends will render a joint trial unfair." *Id.* at p. 8.

Wenger's first trial with Amiri resulted in a mistrial as requested by Wenger's counsel and severance from Amiri, leaving Amiri as the sole defendant in that trial. *See, e.g.*, Dkt. 351. On March 14, 2025, Amiri was found guilty of deprivation of rights under color of law and obstruction, and not guilty of conspiracy. *See* Dkt. 390.

Following the mistrial and severance from Amiri, Wenger's retrial is scheduled for August 4, 2025. The United States anticipates that Rombough, as he did in the trial against Amiri, will again testify regarding the existence of the charged conspiracy. When asked about the "agreement" he had with Amiri and Wenger in Amiri's trial, Rombough stated: "We were all in on the same page, that we didn't feel that the correct punishment was being issued and we could dish out our own. […] We wouldn't intercede if force was used. We wouldn't bring our observations or concerns to a supervisor. […] We would applaud each other for the uses of force. We all had the viewpoint at that time that we didn't have a lot of respect for the community." Tr. 880-882. To that end, Rombough specifically testified that Wenger shared with Rombough about an incident when he broke a woman named C.Y.'s arm and appeared "proud," Tr. 886:2-16, and, later, that he came up to Rombough after his use of force against D.S., charged in Count Eight, and said, "You would be proud of me." Tr. 920:8-9. And the United States anticipates that Rombough's testimony will be corroborated by, among other things, evidence of specific instances of excessive force carried out by Amiri, Rombough, and Wenger, along with their statements in the form of text messages seized from Wenger's, Amiri's, and Rombough's cellular phones—in other words, precisely the evidence to which Wenger objects. For instance, in August 2020, after Amiri's canine bit suspects during arrests made on the previous two days, including once with Wenger present, Wenger texted Amiri the following.

> WENGER:   We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!!

Dkt. 1 at 19. The next day, Amiri's canine bit D.R. during an arrest (Count Four), and Amiri wrote to Wenger:

> AMIRI: bro we saw him laying in bed acting like he was asleep. I walked out the tent and game planned how to fuck him up. went back and did justice. wish you were there. Inside a tent with no cams . . . you would have loved it. [Law Enforcement Agency] agreed to keep cameras off.
>
> WENGER: Bro….fuuuuuuuuuck yes!!! Fuck that nerd!! That's what fucking happens when you run, you acquire a tax. His tax was paid properly. Good shit bro.

Dkt. 1 at 20.

## II. Argument

The statements identified in Wenger's motion are not unduly prejudicial to Wenger, and instead should be admitted as directly relevant to the conspiracy charged in Count One and as evidence of Wenger's willfulness as required by Count Eight.

### A. The Statements Are Admissible Evidence of Conspiracy (Count One)

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." A coconspirator's statement may be admitted against a defendant where the prosecution shows that: (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000). The district court makes this determination by a preponderance of the evidence, considering "any evidence whatsoever," including the proffered statements themselves. *Bourjaily*, 483 U.S. at 175; *id*. at 180 ("We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."). Importantly,

> a determination that there was a reasonable doubt as to a person's participation in a conspiracy (thus warranting an acquittal) [does] not logically preclude a finding that it [is] more likely than not that the person was a co-conspirator (thus supporting a finding under Rule 104(a) that the person was a member of the conspiracy and made a statement in furtherance of it). In light of this critical difference, […] if a district court is persuaded by a preponderance of the evidence that the declarant and the accused were members of a conspiracy, the declarant's statement is admissible notwithstanding the fact that the court concludes that the evidence is insufficient under the reasonable doubt standard to support a conviction of the declarant of the crime of conspiracy.

U.S. RESPONSE TO WENGER MOT. IN LIMINE 1    3
23-CR-269-JSW-3

*United States v. Ehmer*, 87 F.4th 1073, 1128 (9th Cir. 2023). *Cf. United States v. Ching Tang Lo*, 447 F.3d 1212, 1226 (9th Cir. 2006) ("[i]t is well established that a person may be convicted of conspiring with a co-defendant even when the jury acquits that co-defendant of conspiracy"); *United States v. Baird*, 189 F.3d 475 (9th Cir. 1999) (upholding judgment where § 241 defendant's co-conspirators had been acquitted or no verdict had been reached).

The United States will seek to admit two categories of statements that may be admissible under Federal Rule of Evidence 801(d)(2)(E): (1) statements made by Wenger himself, which are separately admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(A), and (2) statements made by Amiri and Rombough. In both cases, the statements will take the form of (a) text messages seized from Wenger's, Amiri's, and/or Rombough's cellular phones; (b) statements made by Wenger, Amiri, and Rombough to other witnesses; and (c) statements made by Wenger, Amiri, and Rombough in Antioch Police Department reports. All of these statements were made in furtherance of the conspiracy alleged in the Indictment. For instance, Wenger, Amiri, and Rombough all made statements to encourage and induce further participation, prompt further action, and keep co-conspirators abreast of their ongoing activities.[1] *See, e.g.*, Dkt. 1 at 11 ("ROMBOUGH: Liked 'exactly! blood for blood.'"), 22 ("WENGER: Lets beat his fucking ass bro! I'm down after work morty."). *See United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (listing statements made to induce enlistment or further participation; statements made to prompt further action; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast as examples of co-conspirator statements). Similarly, Amiri's, Rombough's, and Wenger's statements made in their Antioch Police Department reports are also admissible as co-conspirator statements under Rule 801(d)(2)(E) as evidence of their misleading or false statements to suggest that the force they used was necessary or justifiable. *See*

---

[1] In addition to being separately admissible as statements of a party-opponent, many of the statements are also admissible for non-hearsay purposes, or under one or more exceptions to the rule against hearsay. For instance, some text messages are admissible for their effect on the listener, such as to establish knowledge or notice about the declarant's actual and intended uses of force by the recipients. Others contain present sense impressions and statements of a declarant's "then existing state of mind (such as motive, intent, or plan)," which are admissible under Federal Rule of Evidence 803.

U.S. RESPONSE TO WENGER MOT. IN LIMINE 1     4
23-CR-269-JSW-3

*United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983) (statement need not be made to another member of the conspiracy in order to be admissible).

    Wenger contends that text message evidence other than that specifically related to the use of force against D.S. are "not relevant to an objective analysis into the reasonableness of [that] use of force" and are therefore unduly prejudicial because they would "push the jury to make a subjective determination, in direct contradiction to *Graham v. Connor*." Dkt. 462, at p. 7. But this argument completely ignores Count One and the admissibility of evidence of Wenger's agreement to the charged conspiracy. Even leaving aside Rombough's expected testimony on the agreement and the C.Y. and D.S. incidents, Wenger's statements by themselves establish their agreement to use excessive force. For instance, after Amiri's canine bit a suspect during the course of an arrest that involved both Amiri and Wenger, Amiri told Wenger (in one of the exchanges Wenger specifically moves to exclude):

> AMIRI: if [Law Enforcement Agency] didn't have all those body cams and that was us…we would have fucked him up more. He didn't get what he deserved.
>
> WENGER: I agree
> That's why I don't like body cams

Dkt. 1 at 19. Amiri's canine subsequently bit another suspect identified as D.R. (Count Four) days later, and Amiri then admitted to Wenger that he had "game planned how to fuck [D.R.] up." Dkt. 1 at 20. Wenger once again agreed: "Bro….fuuuuuuuuuck yes!!! Fuck that nerd!! That's what fucking happens when you run, you acquire a tax." Dkt. 1 at 20.

> AMIRI: let's fuck some people up next work week
> WENGER: Bro
> Fuck the mother fucking yes

    These statements, separately admissible as non-hearsay statements of a party opponent, are by themselves sufficient to establish Wenger's participation in the conspiracy for purposes of Rule 801(d)(2)(E). Rombough's participation in the same conspiracy has also been established. For starters, Rombough has already sworn during his change of plea, agreed in his plea agreement, and testified under oath at the Amiri trial (and is expected to testify in the upcoming trial) that he conspired with Amiri, Wenger, and others to use excessive force. *See* Dkt. 239 at 3. These admissions are corroborated by Rombough's own prior statements. For instance, after

Amiri's canine bit a suspect, Amiri told Rombough that he had deployed his canine even though the suspect had been "proned out" because suspects were not permitted to "take [the police] on a high speed [chase] and rob people . . . and crash into cars . . . and just give up." Dkt. 1 at 17. Rombough replied: "Lol agreed." Dkt. 1 at 17. *See also* Dkt. 1 at 11 ("Me too and exactly I'm gonna fuck someone up and hopefully get you a bite."), Dkt. 1 at 13 ("He sprawled out but if you were there we would have gotten u a bite.").

Because "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy," *Bourjaily*, 483 U.S. at 180, this evidence establishes all three defendants' participation in the conspiracy, constitute statements in furtherance of the conspiracy, and is admissible evidence of the conspiracy.

### B. The Statements Are Admissible Evidence of Willfulness (Count Eight)

And even aside from the fact that all of the complained-of exchanges constitute party opponent admissions and/or statements of co-conspirators providing key corroborative evidence of the conspiracy charged against Wenger, Wenger's motion entirely neglects that they are also *evidence of willfulness*. To prove the use of force charged in Count Eight, the government must prove not only that the defendant acted under the color of law and used unreasonable force but also that he acted *willfully*. *See, e.g.*, Dkt. 378, at p. 24 (final jury instruction on § 242). Unlike the objective inquiry about whether force used was reasonable, *see id.* at p. 26 (final jury instruction on unreasonable force), the determination of willfulness requires that the government prove that the defendant "used force knowing that the force he used was unjustified," *id.* at p. 30 (final jury instruction on willfully).

As noted, this Court has previously held that "a jury could reasonably find that [the text exchanges] demonstrate Wenger agreeing, planning, and encouraging other officers to engage in excessive force," and that "[b]ecause direct evidence of state of mind is rarely available, Wenger's prior statements and actions may be used to support a finding of intent as to his own use of force against D.S." Dkt. 160, at p. 6. Given that each of the text exchanges set forth in Wenger's motion not only include co-conspirator statements but also Wenger's own admissions, Wenger is effectively asking that the government be precluded from showing evidence of his state of mind because it is "too prejudicial." On

the contrary, the state of mind exhibited in these texts is far more probative than prejudicial, not only to the conspiracy count charged against Wenger, but also to the question of whether he acted willfully. Accordingly, these statements are also admissible as relevant to willfulness as to Count Eight.

### III.   Conclusion

For the foregoing reasons, Wenger's motion *in limine* (Dkt. 462) should be denied.

DATED:  June 10, 2025                                Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


                                            /s/
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA SARGENT
ALEXANDRA SHEPARD
Assistant United States Attorneys