Kasey A. Castillo, Esq. [SBN 236690]
**KC LAW GROUP**
Mail: 31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, CA 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

Michael D. Schwartz, Esq. [SBN 166556]
**THE MICHAEL SCHWARTZ FIRM**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

*Attorneys for Defendant.*
DEVON CHRISTOPHER WENGER

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>DEVON CHRISTOPHER WENGER,<br><br>　　　　　　Respondent. | Case No.: 4:23-CR-00269-JSW<br>Judge Presiding: Hon. Jeffrey S. White<br><br>**DEFENDANT DEVON CHRISTOPHER WENGER'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. PROC. 29** |

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

## I.　INTRODUCTION

The Defendant, Devon Christopher Wenger ("Wenger"), by and through undersigned counsel, hereby moves for judgment of acquittal pursuant to Fed. R. Crim. Proc. 29 because the Government has failed to establish certain elements of each of charged offense, to wit, 18 U.S.C.§ 241 in the above styled case. As grounds for the dismissal, Wenger offers and attests to the following:

1

**DEFENDANT DEVON CHRISTOPHER WENGER'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED R. CRIM. PROC. 29**

## II.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction…. A motion for judgment of acquittal is reviewed on a sufficiency of the evidence standard." *United States v Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1998)). Evidence is insufficient to sustain a conviction unless, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)).

"More than a 'mere modicum' of evidence is required to support a verdict." *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 320). As the Ninth Circuit has explained, the court must grant a Rule 29 motion if "the evidence construed in favor of the government [is] insufficient to establish every element of the crime" and "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case or where there is a 'total failure of proof of [a] requisite' element." *Nevils*, 598 F.3d at 1167 (internal citation omitted) (quoting *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009)); see also *O'Laughlin v O'Brien*, 568 F.3d 287, 301 (1st Cir. 2009) ("A reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.") (citation and alterations omitted)); *Gonzales v. Gipson*, 701 Fed. Appx. 558, 561 (9th Cir. 2017) (Reversing judgment where conviction "rest[s] on a speculative and weak chain of inferences.")

## III.    APPLICABLE LAW

### 1.    *Count One: Conspiracy Against Rights under 18 U.S.C. § 241*

The Government has not presented sufficient evidence to sustain a conviction for Conspiracy Against Rights under Count One.

To be convicted of the above count it must be shown that first, "that at the beginning no later than in or about February 2019 and ending in or about March 2022, there was an agreement between two or more persons to injure, oppress, threaten, or intimidate one or more persons in the free exercise or enjoyment of any right or privilege secured to them by the Constitution or laws of the United States.

*Jury Instructions*, Dkt. No. 581 at 27. Additionally, (1) the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy; (2) the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and (3) the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture. *Jury Instruction*, Dkt. No. 581 at 30.

The jurisprudence of this Circuit buttresses the jury instruction as it purports that to convict for conspiracy, the government must prove that the defendant (1) agreed to accomplish an illegal objective, and (2) had the intent to commit the underlying offense. *United States v. Espinoza-Valdez*, 889 F.3d 654, 656 (9th Cir. 2018) (citing *United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015)). "The line between conspiracy and an unexercised opportunity to join a conspiracy may be difficult to draw, but it must be drawn where the existence of an agreement is absent." *United States v. Melchor- Lopez*, 627 F.2d 886 (9th Cir. 1980). Suspicion or surmise may not replace "the essential analysis of the qualitative nature of the acts in question." *Id*.

Mere association is not enough. *O'Malley*, et al., 2 Fed. Jury Prac. & Instr. § 31:05 (6th ed.) Requiring evidence to show beyond a reasonable doubt that Defendant knew the purpose or goal of the agreement or understanding and then deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action.

In the underlying case, the government has, at best, introduced evidence of text discussions between Rombough and Amiri with Wenger being an associate of Amiri. Without more, this is, as a matter of law, insufficient to meet the government's requirement of proving a meeting of the minds. *Melchor-Lopez*, 627 F.2d 886 (9th Cir. 1980) ("there can be no conviction for guilt by association, and it is clear that mere association with members of a conspiracy, the existence of an opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator.").

In fact, the government stated that, "what we're looking at really is their passivity." See, Reporters Trial Transcript, hereinafter ("TR" Vol. 4, 552:1-11). The statement continues… so perhaps the issue is a little bit different, it's just their presence, their acquiescence…" *Id*. The issue with this argument is that the government spent an inordinate amount of time on the girth of the exchanges between Amiri and

Rombough, while only spending a modicum amount of time and evidence involving exchanges between Wenger and Amiri.

Despite the circular evidence, the messages between Amiri and Rombough discuss force, but do not involve Wenger; without the connection of Wenger in the use of force of Amiri and Rombough, Wenger cannot be a conspirator who had the intent to commit the underlying offense talked about where Wenger was not present, had no part in the use of force, and not a part of the text thread. *Espinoza-Valdez*, 889 F.3d at 656.

**TESTIMONY AND EXHIBITS ELICITED DURING GOVERNMENT'S CASE-IN-CHIEF**

**A. Absence of Proof of Agreement**

The Government has failed to carry its burden of establishing the foundational element of conspiracy—an agreement. Not only has the Government offered no direct evidence of a meeting of the minds, but it has also failed to produce circumstantial evidence from which a rational factfinder could infer such an agreement. In particular, there is a complete absence of proof linking Mr. Rombough to Mr. Amiri to Mr. Wenger, in any concerted plan or understanding. Mere association or parallel conduct cannot substitute for proof of an actual agreement. Without such evidence, the Government's case rests on speculation rather than fact, and speculation cannot sustain a conviction beyond a reasonable doubt.

Testimony from Rombough ("TR" Vol. 3, 510:4-12) states:

Q: You mentioned the defendant, Mr. Wenger. How well did you know Mr. Wenger?

A: He was more of an acquaintance and co-worker.

Q: Why do you include him in the list then?

A: He had a reputation for using force like I did.

Q: Any other reasons for including him?

A: He was vouched that he was a good human by another person.

Q: Who?

A: Officer Amiri.

The proffered testimony by Rombough suggests that he had no direct rapport with Defendant, only that the Defendant was an associate of Amiri's, whom Rombough trusted from working closely with.

Additional testimony from Rombough ("TR" Vol. 3, 511:2-10): furthers his close relationship with Amiri with accompanying evidence with Exhibit 102, Pp 1-5.

Q: Did you ever talk to people you trusted about violating people's civil rights?

A: Yes ma'am.

…

Q: All right. Sir, do you see your name here?

A: Yes. Yes, ma'am.

Q: And who else's name do you see here?

A: Officer Amiri, or Morteza Amiri.

…

Q: Do you recognize this to be a test message exchange between you and Mr. Amiri?

A: I do.

Q: Did you text with Mr. Amiri Frequently?

A: Yes, ma'am.

…

Testimony from Rombough ("TR" Vol. 3, 514:13-16) accompanying Exhibit 102, Pp 2186-2188.

Q: Flipping to the next page. Do you see what you said in the top left here, "I intentionally violate civil rights off the time.

A: Yes, ma'am.

At the point where Rombough admits that he intentionally violates civil rights, the text messages are between Rombough and Morteza Amiri. Absent from this text thread is Wenger. In fact, much of Rombough's testimony centered around uses of force that either Rombough or Amiri had used and text messages between the two of them but did not include Wenger. For example, ("TR" Vol. 4, 580:13-596:1) (Use of Force against Larry Reed). In much of the testimony Rombough describes an incident where he deploys a round from a 40MM. He testified to his mindset wanting to use it if he could. *Id*. at 13-16. After using the 40MM, Rombough testified that he celebrated his use of the 40MM by talking about it via text messages and photos. ("TR" Vol. 4, 592:21-24), and against absent from that celebration were any text to Wenger.

Additionally, Rombough testified that a different officer showed him a text that another officer that isn't Amiri showed a message that said, Amiri texted Bro Rombough be doing some unnecessary 40's. Right?  ("RT" Vol. 4, 757:18-758:2). This notes that nonexistence of Rombough and Amiri

5

**DEFENDANT DEVON CHRISTOPHER WENGER'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED R. CRIM. PROC. 29**

conspiracy. Amiri did not agree with Rombough's use of force with the 40MM and stated as much to a third party, this is not co-conspirator behavior.

Where it seems that the Government attempts to assimilate Wenger into a conspiracy are the text that are shared between Amiri and Wenger. However, there is no actual agreement to go after civilian rights as announced by Rombough. These were instances where Amiri was doing his job, and after-the-fact Wenger was congratulating him on doing a good job.

### B. Absence of Any Benefit

In the Ninth Circuit, proof of conspiracy requires more than showing association with conspirators or incidental assistance; the prosecution must demonstrate that the defendant knew, or had reason to know, that any benefit he or she might receive was dependent on the success of the entire scheme. Ninth Circuit Model Criminal Jury Instruction 11.4 provides that "the evidence must show that … each defendant … had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture." This requirement has been repeatedly recognized in Ninth Circuit precedent. In *United States v. Duran*, the court reversed a conspiracy conviction where there was no evidence the defendant knew that "his benefits were probably dependent on the success of the entire operation." 189 F.3d 1071, 1080 (9th Cir. 1999).

In *Duran*, the defendant was convicted of conspiring to distribute cocaine. The government argued that Duran's mere handling of a shipment demonstrated his agreement with the larger conspiracy. The Ninth Circuit disagreed, emphasizing that conspiracy liability requires proof that a defendant "knew, or had reason to know, that his benefits were probably dependent on the success of the entire operation." *Id.* at 1080. Because the government failed to show that Duran's participation was tied to any expected benefit from the broader drug distribution scheme, the conviction could not stand. The court reversed, holding that without evidence of benefit dependency, the evidence showed at most isolated assistance rather than knowing participation in a criminal agreement.

Similarly, in *United States v. Kearney*, the court explained that the intent element of conspiracy is not satisfied unless the defendant had reason to believe his advantage "was probably dependent on the success of the entire venture." 560 F.2d 1358, 1362 (9th Cir. 1977).

The "benefit dependency" requirement ensures that criminal liability attaches only to those who consciously align themselves with the broader illegal scheme. As the Ninth Circuit has recognized, without evidence that a defendant expected to share in the fruits of the conspiracy, there is a risk of

Case 4:23-cr-00269-JSW   Document 583   Filed 09/15/25   Page 7 of 9

punishing mere presence, casual involvement, or independent conduct. *Duran* underscores this principle: there, the absence of evidence connecting the defendant's anticipated benefit to the conspiracy's outcome warranted reversal. *Duran*, 189 F.3d at 1080. Likewise, *Kearney* rejected the notion that sporadic or isolated conduct, absent proof of a dependent benefit, is sufficient to establish agreement and intent. 560 F.2d at 1362. Thus, the rule protects against expansive and speculative conspiracy liability.

Here, the government has not presented evidence that Wenger's alleged participation offered him any benefit contingent upon the conspiracy's success. No testimony, exhibits, or inferences support the conclusion that Defendant's welfare, compensation, or status was tied to whether the purported scheme succeeded. At most, the government has suggested incidental or tangential involvement, but such evidence falls short under *Duran* and *Kearney*. Without proof that Defendant had reason to know that his benefit depended on the conspiracy's fruition, the essential mental state for conspiracy cannot be established.

Though the Government during their case-in-chief on September 15, 2025, attempted to bring a theme that the benefit was the prospect of SWAT, that proposition must fail. In no testimony, or exhibits, the government has not shown that Wenger had a belief that if he used excessive force and violated citizen rights he would become a member of the SWAT team. No evidence by the government has been proffered that a condition precedent is a way in which Wenger would be allowed to join SWAT team. More importantly, and directly to the point, if Rombough was in fact a co-conspirator as he alleges and SWAT was the end game, why would Rombough then vote against Wenger? See, Rombough's testimony where he states that he "wasn't happy" that Wenger had made SWAT because he "hadn't voted for him." ("TR" Vol. 4, 663:9-14).

Because the record lacks evidence that Defendant's benefits were contingent on the success of the venture, the government has failed to meet the Ninth Circuit's standard for conspiracy liability. Under *Duran* and *Kearney*, this omission renders the evidence legally insufficient, and judgment of acquittal is warranted.

**C. Insufficient Evidence to Show That Wenger Should Have Known**

The government has failed to prove beyond a reasonable doubt that Mr. Wenger knew, or had reason to know, that he was joining a broader conspiracy involving actors other than those with whom he directly communicated. Under Ninth Circuit precedent, knowledge of the broader scope of the conspiracy is an essential element, and the absence of such proof requires acquittal on the conspiracy charge.

7

**DEFENDANT DEVON CHRISTOPHER WENGER'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED R. CRIM. PROC. 29**

In the Ninth Circuit, a defendant cannot be convicted of conspiracy unless the government establishes that he knew or had reason to know that other conspirators were involved with those with whom he directly conspired. *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984). While the government need not show that the defendant knew all members or all details of the scheme, it must show the defendant knew of the essential nature of the plan and his connection to it. *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001). Mere association or awareness of isolated acts does not suffice. *United States v. Peterson*, 549 F.2d 654, 657 (9th Cir. 1977).

The Ninth Circuit has consistently rejected convictions where the evidence only established bilateral agreements without proof the defendant knew the conspiracy extended to others. In *Bibbero*, the court reversed a conspiracy conviction where the defendant engaged in fraudulent activity with one co-conspirator but lacked knowledge that additional conspirators existed. Similarly, in Peterson, the court held that the government must show "a single conspiracy with a common goal" and that the defendant knew his actions were tied to the larger scheme, not just an individual transaction. Conversely, in Herrera-Gonzalez, the conviction was upheld because the defendant's repeated participation in coordinated drug deliveries showed he understood the ongoing and multi-person nature of the scheme.

Here, the government's case rests primarily on text messages between Wenger and Amiri, and later with Evans. These exchanges show discrete communications, but they do not establish that Wenger knew he was part of a larger plan involving multiple conspirators. For example, when Wenger asked Amiri "YOU GUYS GET THAT DUDE? ARE YOU GUYS ALL GOOD??", the government seeks to imply knowledge of others. Yet the context shows only a conversation with Amiri, not awareness of a larger network or shared objective. Unlike *Herrera-Gonzalez*, there is no repeated evidence of Wenger coordinating with multiple actors toward a common plan. At most, the record shows bilateral exchanges that are insufficient under *Bibbero*.

Because the government failed to prove Wenger knew, or had reason to know, that his communications extended to a conspiracy involving other persons beyond Amiri or Evans, the Ninth Circuit's standard is not met. Accordingly, the conspiracy charge cannot stand.

///

///

///

WHEREFORE, Defendant, Wenger prays this court enter a judgment of acquittal on the above referenced count in the indictment.

Respectfully submitted,

_____/s/_____
Kasey A. Castillo, Esq.
CA State Bar Number: 236690
**KC LAW GROUP**
31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, CA 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

_____/s/_____
Michael D. Schwartz, Esq.
CA State Bar Number: 166556
**THE MICHAEL SCHWARTZ FIRM**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

*Attorneys for Defendant,*
DEVON CHRISTOPHER WENGER

**DEFENDANT DEVON CHRISTOPHER WENGER'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED R. CRIM. PROC. 29**