# EXHIBIT 5



# Use of Force

### 300.1  PURPOSE AND SCOPE
This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this department is expected to use these guidelines to make such decisions in a professional, impartial and reasonable manner.

### 300.1.1  DEFINITIONS
Definitions related to this policy include:

Deadly force - Any use of force that creates a substantial risk of causing death or serious bodily injury, including but not limited to the discharge of a firearm (Penal Code § 835a).

Force - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

### 300.2  POLICY
The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Officers are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Officers must have an understanding of, and true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

### 300.2.1  DUTY TO INTERCEDE
Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force. An officer who observes another employee use force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.

### 300.3  USE OF FORCE
Officers shall use only that amount of force that reasonably appears necessary given the facts and totality of the circumstances known to or perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose (Penal Code § 835a).

The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split-second decisions about the amount of force that reasonably

EX 005-001

appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain, and rapidly evolving.

Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident.

It is also recognized that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the tools, weapons, or methods provided by the [Department/Office]. Officers may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be objectively reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires an officer to retreat or be exposed to possible physical injury before applying reasonable force.

### 300.3.1  USE OF FORCE TO EFFECT AN ARREST
Any peace officer may use objectively reasonable force to effect an arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance on the part of the person being arrested; nor shall an officer be deemed the aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or to overcome resistance. Retreat does not mean tactical repositioning or other de-escalation techniques (Penal Code § 835a).

### 300.3.2  FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit. These factors include but are not limited to:

- (a) The apparent immediacy and severity of the threat to officers or others (Penal Code § 835a).
- (b) The conduct of the individual being confronted, as reasonably perceived by the officer at the time.
- (c) Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of officers available vs. subjects).
- (d) The conduct of the involved officer (Penal Code § 835a).
- (e) The effects of drugs or alcohol.
- (f) The individual's apparent mental state or capacity (Penal Code § 835a).
- (g) The individual's apparent ability to understand and comply with officer commands (Penal Code § 835a).

- (h) Proximity of weapons or dangerous improvised devices.
- (i) The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.
- (j) The availability of other reasonable and feasible options and their possible effectiveness (Penal Code § 835a).
- (k) Seriousness of the suspected offense or reason for contact with the individual.
- (l) Training and experience of the officer.
- (m) Potential for injury to officers, suspects, and others.
- (n) Whether the person appears to be resisting, attempting to evade arrest by flight, or is attacking the officer.
- (o) The risk and reasonably foreseeable consequences of escape.
- (p) The apparent need for immediate control of the subject or a prompt resolution of the situation.
- (q) Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.
- (r) Prior contacts with the subject or awareness of any propensity for violence.
- (s) Any other exigent circumstances.

### 300.3.3  PAIN COMPLIANCE TECHNIQUES
Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed department-approved training. Officers utilizing any pain compliance technique should consider:

- (a) The degree to which the application of the technique may be controlled given the level of resistance.
- (b) Whether the person can comply with the direction or orders of the officer.
- (c) Whether the person has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

### 300.3.4  CAROTID CONTROL HOLD
The proper application of the carotid control hold may be effective in restraining a violent or combative individual. However, due to the potential for injury, the use of the carotid control hold is subject to the following:

- (a) The officer shall have successfully completed department-approved training in the use and application of the carotid control hold.

EX 005-003

- (b) The carotid control hold may only be used when circumstances perceived by the officer at the time indicate that such application reasonably appears necessary to control a person in any of the following circumstances:
    1. The subject is violent or physically resisting.
    2. The subject, by words or actions, has demonstrated an intention to be violent and reasonably appears to have the potential to harm officers, him/herself or others.
- (c) The application of a carotid control hold on the following individuals should generally be avoided unless the totality of the circumstances indicates that other available options reasonably appear ineffective, or would present a greater danger to the officer, the subject or others, and the officer reasonably believes that the need to control the individual outweighs the risk of applying a carotid control hold:
    1. Females who are known to be pregnant
    2. Elderly individuals
    3. Obvious juveniles
- (d) Any individual who has had the carotid control hold applied, regardless of whether he/she was rendered unconscious, shall be promptly examined by paramedics or other qualified medical personnel and should be monitored until examined by paramedics or other appropriate medical personnel.
- (e) The officer shall inform any person receiving custody, or any person placed in a position of providing care, that the individual has been subjected to the carotid control hold and whether the subject lost consciousness as a result.
- (f) Any officer attempting or applying the carotid control hold shall promptly notify a supervisor of the use or attempted use of such hold.
- (g) The use or attempted use of the carotid control hold shall be thoroughly documented by the officer in any related reports.

## 300.4 DEADLY FORCE APPLICATIONS

If an objectively reasonable officer would consider it safe and feasible to do so under the totality of the circumstances, officers should evaluate the use of other reasonably available resources and techniques when determining whether to use deadly force. The use of deadly force is only justified in the following circumstances (Penal Code § 835a):

- (a) An officer may use deadly force to protect him/herself or others from what he/she reasonably believes is an imminent threat of death or serious bodily injury to the officer or another person.
- (b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless

immediately apprehended. Where feasible, the officer shall, prior to the use of force, make reasonable efforts to identify themselves as a peace officer and to warn that deadly force may be used, unless the officer has objectively reasonable grounds to believe the person is aware of those facts.

Officers shall not use deadly force against a person based on the danger that person poses to him/herself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the officer or to another person (Penal Code § 835a).

An "imminent" threat of death or serious bodily injury exists when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the officer or another person. An officer's subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that from appearances is reasonably believed to require instant attention (Penal Code § 835a).

### 300.4.1   SHOOTING AT OR FROM MOVING VEHICLES
Shots fired at or from a moving vehicle are rarely effective. Officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others.

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle.

### 300.5   REPORTING THE USE OF FORCE
Any use of force by a member of this department shall be documented promptly, completely and accurately in an appropriate report, depending on the nature of the incident. The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances. Additionally, the officer shall appropriately document the use of force in Blue Team, describing the nature of the incident and any injuries to officers, suspects and/or citizens.
   The Blue Team report should be forwarded to the officer's immediate supervisor for review.
  This should be completed by the end of the shift unless an exception has been approved by the Watch Commander or appropriate Bureau Commander.  To collect data for purposes of training, resource allocation, analysis and related purposes, the Department may require the completion of additional report forms, as specified in department policy, procedure or law.

### 300.5.1   NOTIFICATION TO SUPERVISORS
Supervisory notification shall be made as soon as practicable following the application of force in any of the following circumstances:

    (a)   The application caused a visible injury.

    (b)   The application would lead a reasonable officer to conclude that the individual may have experienced more than momentary discomfort.

    (c)   The individual subjected to the force complained of injury or continuing pain.

    (d)    The individual indicates intent to pursue litigation.

    (e)    Any application of a TASER device or control device.

    (f)    The individual subjected to the force was rendered unconscious.

    (g)    An individual was struck or kicked.

    (h)    An individual alleges any of the above has occurred.

### 300.5.2 REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE
The Administrative Analyst or the authorized designee shall ensure that data required by the Department of Justice (DOJ) regarding all officer-involved shootings and incidents involving use of force resulting in serious bodily injury is collected and forwarded to the DOJ as required by Government Code § 12525.2.

### 300.6 MEDICAL CONSIDERATION
Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed.

Based upon the officer's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff or medical staff at the jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another officer and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor, or if not available, the primary handling officer shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Officers who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

### 300.7 SUPERVISOR RESPONSIBILITY
When a supervisor is able to respond to an incident in which there has been a reported application of force, the supervisor is expected to:

(a) Obtain the basic facts from the involved officers. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b) Ensure that any injured parties are examined and treated.

(c) Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible injury or complaint of pain, as well as overall photographs of uninjured areas.

(d) Ensure the case is thoroughly investigated, documented and follows department procedures and guidelines.

(e) Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy non-compliance or if for any reason further investigation may be appropriate.

(f) Review and approve all related reports.

(g) Review all Blue Team entries along with any attached reports, photos, and/or recordings for accuracy, completeness, and to ensure officer(s') compliance with policy.  Write a brief synopsis of the use of force incident including an analysis and recommendation for disposition.  Forward the Blue Team entry to the Watch Commander or appropriate Bureau Commander for further review and final disposition.  This should completed by the end of the shift unless an exception has been approved by the Watch Commander or appropriate Bureau Commander.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

### 300.7.1  WATCH COMMANDER / BUREAU COMMANDER RESPONSIBILITY
The Watch Commander shall review each use of force by any personnel within his/her command to ensure compliance with this policy and to address any training issues.

(a) If the officer using force is not assigned to the Community Policing Bureau, the appropriate Bureau Commander shall assume this responsibility.

The Blue Team Report shall be reviewed and a final disposition determined by the Watch Commander or appropriate Bureau Commander.  An appropriate disposition should be one of the following:

(a) No Action - The Use of Force observed was consistent with agency best practices and policy.

(b) Commend - The Use of Force observed exceeded expectations and is worthy of consideration for a commendation.

(c) Counseling - The Use of Force was inconsistent with agency best practices resulting in a need for a counseling session.

(d) Training - The Use of Force incident identified a specific training deficiency within the department or the subject officer(s) that could be corrected by additional training.

(e) Internal Affairs - The Use of Force observed requires further review and/or appears to violate department policy, federal, state, or local law, policy or rule and should be investigated by the Internal Affairs Unit.

The Blue Team report should then be forwarded to the Division Commander for final review.

## 300.8 TRAINING

Officers will receive periodic training on this policy and demonstrate their knowledge and understanding.

Copyright Lexipol, LLC 2020/02/05, All Rights Reserved.
Published with permission by Antioch Police Department

Use of Force - 56

EX 005-008