Kasey A. Castillo, Esq. [SBN 236690]
**KC LAW GROUP**
Mail: 31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, CA  92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

Michael D. Schwartz, Esq. [SBN 166556]
**THE MICHAEL SCHWARTZ FIRM**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

*Attorneys for Defendant.*
DEVON CHRISTOPHER WENGER

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No.: 4:23-CR-00269-JSW |
| | ) Hearing Date: November 25, 2025 |
| Plaintiff, | ) Judge Presiding: Hon. Jeffrey S. White |
| | ) |
| v. | ) **DEFENDANT DEVON** |
| | ) **CHRISTOPHER WENGER'S** |
| DEVON CHRISTOPHER WENGER, | ) **REPLY TO GOVERNMENT'S** |
| | ) **OPPOSITION TO RULE 29** |
| | ) **MOTION.** |
| Defendant. | ) |
| | ) |

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

## I.    INTRODUCTION

In its Opposition, the Government argued perceived inconsistencies in the Defense's motion, referenced in the footnotes. In contrast to the Government's Opposition, however, the Defense argument and reliance on those cases, namely *Nevils*, *Pemberton*, *Ramirez*,

1

*Lopez*, and *Espinoza-Valdez*, is sound, as will be demonstrated in the Defense response, below.

Defendant Devon Christopher Wenger respectfully submits this reply in further support of his motion for judgment of acquittal on Count One (Conspiracy). The government failed to present evidence from which any rational juror could find beyond a reasonable doubt that Wenger knowingly and intentionally entered into an agreement to injure, oppress, threaten, or intimidate persons in the exercise of federal rights. The record consists largely of rhetoric, sporadic vulgar texts, and incident-specific use-of-force evidence, but it does not establish the indispensable element of an actual agreement that Wenger knew of and intentionally joined. The question before this Court is not whether the jury could imagine guilt, but whether *any rational trier of fact*, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that Devon Wenger knowingly and intentionally entered into an agreement to violate the civil rights of others under 18 U.S.C. § 241.

The record here — *even construed favorably to the government* — shows, at most, a pattern of unprofessional texts, coarse language, and occasional misconduct. It does not establish a shared criminal objective or any meeting of the minds. The government's opposition relies heavily on unreasonable inference upon inference, in direct violation of the limits articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), and *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (*en banc*).

Because the evidence fails to prove that Wenger knowingly joined any agreement to use excessive force or to deprive others of constitutional rights, the conviction cannot stand and judgment of acquittal must be entered as a matter of law.

## II.    LEGAL STANDARD

Under *Jackson v. Virginia*, the inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). "[C]ircumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned. *United States v. Kelly*, 527 F.2d 961, 965 (9th Cir.1976). However, mere suspicion or speculation does not rise to the level of sufficient evidence. *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.1986).

Although a motion for judgment of acquittal is not a vehicle to reweigh evidence, it *is* a constitutional safeguard against what we have in the case at bar: convictions grounded in ambiguity, innuendo, or association. When the government's case "rests on speculation, suspicion, or ambiguous inferences," due process requires acquittal ***even after a jury verdict***. *Nevils*, 598 F.3d at 1167 and *Burks v. United States*, 437 U.S. 1, 16 (1978) (a constitutional safeguard against convictions grounded with insufficient evidence; where the government's proof was so lacking that it should not have been submitted to the jury")(Emphasis added). Text messages with supposition, hypotheticals as to why the conspiracy was formed, how it was agreed to, when it was agreed upon, and for what purpose the conspiracy had, is exactly what is meant by insufficient evidence.

## III.    ARGUMENT

### 1. THE GOVERNMENTS OPPOSITION RESTS ON MISCHARACTERIZED LAW AND INFERENTIAL GAPS

#### A. The Government Misstates the Scope of *Jackson* and *Nevils*

The government argues that Wenger's alternative interpretation of the evidence "has no legal weight" because *Nevils* forbids "innocent explanations." That reading is not entirely correct. *Nevils* does state against appellate courts substituting their view for a jury's, but it simultaneously reaffirms that verdicts cannot stand where the evidence equally supports innocence. *Id*. at 1167-68.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

Here, the government's proof rests on ambiguous text messages, vague testimony from a cooperating co-conspirator, and speculative inferences that Wenger must have shared an unlawful purpose. That is precisely the type of inferential stacking *Nevils* and *Jackson* prohibit. The Constitution requires proof of actual knowledge and intent — not possibility, atmosphere, or shared bravado.

B. The Government's Reliance on Defendant's Mis-Cited and Inapposite Cases Underscores Its Argument's Overreach

The Government's opposition states that the cases that defense argues are unsupportive of the defense's contention or do not have anything to do with conspiracy. *Lopez*, for example, inferred that mere proximity to a crime or association is not sufficient evidence of participation. This is also true where the Ninth Circuit has repeatedly emphasized that mere proximity to the scene of a crime or casual association with conspirators does not suffice to establish participation in a conspiracy. For example, in *Estrada-Macias*, the court stated that "mere casual association with conspiring people is not enough to establish participation in that conspiracy" *U.S. v. Estrada-Macias*, 218 F.3d 1064, 1066 (2000)(quoting *United States v. Cloughessy*, 572 F.2d 190, 191 (9th Cir. 1977)). Similarly, in *Peterson*, the court held that "neither mere association and activity with coconspirator nor even knowledge of conspiracy's existence meets standards required to link defendant to conspiracy." *U.S. v. Peterson*, 549 F.2d 654, 658 (1977). The Court in *Peterson* also goes on, adding that, hearsay declarations of a co-conspirator are inadmissible if no "substantial, independent evidence" links the defendant to the conspiracy. (Citing to, *United States v. Nixon*, 418 U.S. 683, 701 n. 14, (1974). Here, the evidence of text messages and the co-conspirator, Rombough, stating that *his speculative opinion* of the subjective thoughts of Amiri and Wenger equate to the agreement of conspiracy that Rombough orchestrated, is exactly what requires independent evidence to link Wenger to the purported conspiracy.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

In *Corona-Verbera*, the court clarified that "mere presence at the location of a conspiracy's activities, while the activities are taking place, knowing that they are taking place, without proof of intentional participation in the conspiracy, cannot support a conspiracy conviction" *U.S. v. Corona-Verbera*, 509 F.3d 1105 (2007). This principle underscores the necessity of evidence showing intentional participation in the conspiracy.

The government's opposition does point out that *Pemberton* is a case in which the Ninth Circuit found that the evidence of agreement was sufficient, but ignores that *Pemberton* draws a significant contrast to the one at bar. Specifically, the intent of bringing up *Pemberton* was to elucidate the type of corroborating evidence that would be needed in order for the text messages alone to hold evidentiary weight.

Unlike this case, *Pemberton* involved direct, unambiguous proof of an agreement. The conspirators there negotiated profit shares, specified transportation and storage methods, identified markets, and performed multiple overt acts to further the plan — including securing stash locations and equipping a garage with scales, baggies, and tables to package contraband. *U.S. v. Pemberton*, 862 F.2d 730, 732-33 (9th Cir. 1988). That evidence established a "union of the minds" and "worked-out specifics," which are the hallmarks of a criminal agreement. *Id*. at 733. The Ninth Circuit upheld the conviction because both the agreement and the conspiratorial objective were concrete and corroborated.

The record here bears none of those features. The government cannot identify any specific agreed-upon objective that included Defendant Wenger by either direct or circumstantial evidence, no coordinated steps, no division of roles, nor any discussion where Wenger assented to violate constitutional rights. There were no logistics, no timing, no plan, and no overt acts tied to an actual agreement. Instead, the government relies on ambiguous texts, workplace vulgarity, and a cooperator's subjective speculation about

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

what in his biased opinion others "must have meant." That is precisely what *Melchor-Lopez*, *Corona-Verbera*, *Peterson*, and *Estrada-Macias* forbid.

Indeed, *Pemberton* underscores why §241 liability cannot rest on atmosphere, association, or bravado. The Ninth Circuit has never allowed a conspiracy conviction where the evidence shows only parallel conduct or shared attitudes without proof of an actual agreement. *Kotteakos*, 328 U.S. at 772–73. Because the government failed to prove the one element *Pemberton* placed central — a true "meeting of the minds" — the case's intended application here reinforces that judgment of acquittal is required.

The government further argues that *Ramirez* is inapposite because the Ninth Circuit there rejected an inference of conspiracy based on drug quantity rather than conversations. But the government mistakes why *Ramirez* controls. The holding in *United States v. Ramirez*, 714 F.3d 1134 (9th Cir. 2013) is not limited to narcotics quantities — it articulates a broader constitutional principle directly applicable here: a conspiracy conviction cannot be sustained where the government merely piles inference upon inference without proof of knowing assent. *Id*. at 1139–41.

In *Ramirez*, the Ninth Circuit reversed because the government "presented no evidence of any agreement" and instead relied on an inferred meeting of the minds from ambiguous circumstances. *Id*. at 1141. The precise type of ambiguity may differ — drug quantity in *Ramirez*, versus ambiguous text rhetoric here — but the constitutional flaw is identical: the government failed to offer affirmative evidence that the defendant intentionally joined an agreement.

Thus, *Ramirez* does not weaken the defense position, it strengthens it, because it bars exactly what the government attempts here: a conspiracy verdict based on atmosphere, assumption, or *inferred* agreement rather than evidence of *actual* agreement. *Ramirez* also aligns squarely with *Nevils*, *Jackson*, *Peterson*, *Estrada-Macias*, and *Corona-Verbera*, each of which prohibits convictions based on speculation or "mere association, casual

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

communication, or parallel conduct." *Ramirez* is simply another application of that same Ninth Circuit rule of sufficiency.

In short, the distinction is this: *Ramirez* rejected inference-stacking when the government lacked evidence of assent. Here, the government likewise lacks evidence of assent. The fact that Ramirez involved drug quantity rather than ambiguous texts is immaterial, because the rule — not the narcotics setting — is what matters. The Ninth Circuit does not allow juries to imagine an agreement when the government failed to prove one.

2. NO RATIONAL JUROR COULD FIND THAT WENGER KNOWINGLY JOINED ANY CONSPIRACY UNDER § 241

A. The Evidence Shows Only Parallel or Isolated Misconduct, Not a Criminal Agreement

To prove a conspiracy under § 241, the government must establish (1) an agreement to injure, oppress, threaten, or intimidate persons in the free exercise of their rights, and (2) that the defendant knowingly joined that agreement intending to further its object. *United States v. Iribe*, 564 F.3d 1155, 1160 (9th Cir. 2009).

The government's proof does not identify what agreement Wenger allegedly joined, with whom, when, or on what terms. The government repeatedly represented that Amiri and Rombough were co-conspirators and sought to admit their statements, but the Court required an offer of proof precisely because the record lacked independent linkage of "purported co-conspirator statements" to a conspiracy that included other officers, in an attempt to connect Wenger. Trial Record ("TR" Vol. 3, 417:1-418:6). The evidentiary presentation that followed focused on administrative records, training,[1] and discrete use-

---

[1] It should be noted that although the Government spent significant amounts of time on policy and training with retired Captain Morefield and the current chief, there was no testimony from either that Defendant Wenger's actions were inconsistent with training outside of policy. Hence, not even an inference, then, of an action in furtherance of a conspiracy on the part of Defendant Wenger.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

of-force incidents, none of which identified a meeting, communication, or understanding in which Wenger agreed to an unlawful objective. ("TR" Vol. 3, 404:5-408:25); ("TR" Vol. 3, 420:6-422:21); ("TR" Vol. 3, 437:10-439-13); ("TR" Vol. 3, 440:13-444:19); ("TR" Vol. 3, 450:8-451:15).

Matter of fact, the government's principal witness, Rombough, did not supply the missing agreement. He characterized Wenger as an acquaintance and co-worker, not a close associate; he rarely texted Wenger, never called him, and never socialized with him. ("TR" Vol. 3, 509:7-510:10); ("TR" Vol. 4, 762:4-24); ("TR" Vol. 4, 774:8-19). He admitted that critical "violate people's rights" text threads did not include Wenger. ("TR" Vol. 4, 762:4-24); ("TR" Vol. 4, 750:15-20). He also voted against Wenger being placed on SWAT. When asked why Rombough listed Wenger among "trusted confidantes," he cited only Wenger's supposed reputation and Amiri's vouching—not any discussion or assent to a plan. These generalized impressions cannot substitute for proof of an agreement. ("TR" Vol. 3, 510:4-20);  The government's reliance on this testimony underscores the gap: there is no evidence as to what, if anything, was specifically agreed to as to Wenger, who agreed to it, or what any agreement was intended to accomplish, as it relates to Wenger. *United States v. Espinoza-Valdez*, 889 F.3d 654, 658 (9th Cir. 2018).

The government failed to produce any evidence that Wenger agreed — explicitly or implicitly — with anyone to use unreasonable force. The cited text messages ("Please find this guy and f*** him up") are isolated outbursts, untethered to any subsequent coordinated act. There is no evidence that Wenger met with, planned with, or even discussed unlawful tactics with others beyond these vulgar exchanges.

The Supreme Court has long rejected attempts to transform "similar behavior or common aims" into conspiracy. *Kotteakos v. United States*, 328 U.S. 750, 772–73 (1946). The government's narrative — that officers' shared bravado "could not exist absent agreement" — is precisely the sort of inferential overreach *Kotteakos* condemns.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

B. The "April 2019" Messages Do Not Establish Knowing Participation or Agreement

The opposition asserts that Wenger's April 21, 2019 text — "Please find this guy and f*** him in the ass" — proves initiation of a criminal agreement. But context and subsequent inaction show otherwise. There is no evidence that anyone acted upon this message or that Wenger ever followed up.

The text-message evidence is insufficient to prove agreement. The government points to isolated, profane exhortations and dark humor—e.g., "Let's fuck some people up next workweek," to which Wenger responded enthusiastically; and "Please find this guy and fuck him in the ass," followed by Amiri's "I'll bite em." ("TR" Vol. 2, 217:21-218-6); ("TR" Vol. 2, 223:21-224:3). But the government's own witnesses placed these exchanges in a culture of "jokes/dark jokes," reinforced by laughing emojis and the absence of follow-through by Wenger—such as the Mason Zeigler sequence, where Wenger sent "LET'S BEAT HIS FUCKING ASS BRO!" yet did not attend the contact; Wenger was not involved in the contact at all, although he was on duty at the time. ("TR" Vol. 5, 1018:4-12); ("TR" Vol. 5, 1004:1-12); ("TR" Vol. 5, 1025:20-1026:10. The texts, in fact, discuss "using force," not an agreement to use excessive force or violate rights; they were sporadic over years; and many of can be argued would be the most incriminating chains were solely between Amiri and Rombough, "none of them involved Mr. Wenger." ("TR" Vol. 4, 744:13-745:5). Even the government conceded the that agreement, at best, could rest on April 2019 "alone," a theory untethered to any identified act by Wenger manifesting knowing and intentional joinder thereafter, particularly given Amiri's 2021 message—"I don't know you, this must be a new Wenger… new year, new me"—which undermines the claim of any longstanding, continuing agreement involving Wenger. ("TR" Vol. 6, 1200:16-23).

Moreover, the government's own witnesses conceded uncertainty: it "does not confirm whether Amiri or Rombough had the promised in-person conversation with

9

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

Wenger later that evening." Without such corroboration, no rational factfinder could conclude beyond a reasonable doubt that Wenger's impulsive message reflected genuine intent to violate civil rights.

   C.   The Government's "Pattern" Theory Is Legally Flawed

Unable to identify a specific agreement, the opposition falls back on pattern: Wenger "looked for opportunities to use force," "failed to intercede," and "falsified reports." Even if true, such conduct does not prove conspiracy. At most, it alleges discrete acts of excessive force — already rejected by the Court in Count Two. Conspiracy liability cannot be bootstrapped from alleged substantive acts without proof of the required *mens rea* to agree.

Incident evidence and post-incident chatter do not fill the void. The China/Claudjanae Young event was contemporaneously witnessed by Officer Nilsen, who corroborated resistance and injury to Wenger and whose report "mirrors" Wenger's; Nilsen is not alleged as a co-conspirator. ("TR" Vol. 6, 1185:12-1186:4).  As to Dajon Smith, the Court dismissed the substantive §242 count for lack of proof on key elements, further undercutting the notion that this incident proves an unlawful agreement; the Court allowed facts as potential overt-act evidence but barred argument that the incident was a separate crime; the record shows supervisor involvement, on-scene directives, and multiple officers contemplating options, providing obvious innocent explanations inconsistent with a secret agreement to violate rights. ("TR" Vol. 6, 1303:7-25). The government's theory that officers "workshopped" reports together is asserted, but the record confirms limited admission of reports and that at least with China Young, another officer's corroboration exists; the government's broader "matching reports" narrative is not tied to Wenger by concrete evidence. ("TR" Vol. 6, 1185:12-1186-4).

As the Ninth Circuit explained in *Espinoza-Valdez*, 889 F.3d 654 (9th Cir. 2018), conspiracies require *concerted* action, not parallel wrongdoing or similar motives.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

Independent misconduct, even if reprehensible, does not establish a mutual commitment to a common unlawful objective.

D. The Government's Reliance on Rombough's Testimony Is Constitutionally Insufficient

The prosecution's case hinges on the testimony of cooperator Eric Rombough — a witness facing his own potential incarceration exposure who expected to obtain leniency through cooperation. He is an admitted liar. His claims that Wenger joined an existing agreement were also uncorroborated and contradicted by objective evidence. *Nixon*, 418 U.S. at 701 n. 14.

It is well established that a conviction cannot rest solely on the uncorroborated testimony of a co-conspirator whose credibility is compromised. Rombough's statements about "trust" and "mutual understanding" describe cultural affinity, not a conspiratorial pact. Absent independent corroboration, his testimony amounts to conjecture. *United States v. Bernhardt*, 840 F.2d 1441, 1448 (9th Cir. 1988) (conviction cannot rest on sole, uncorroborated, compromised co-conspirator testimony).

E. The Alleged "Secrecy and Falsification" Are Equally Ambiguous

The government treats incomplete reports as "coordinated concealment." But the evidence shows, at most, individual reporting deficiencies or common discrepancies — not an orchestrated cover-up. Falsification requires proof of shared concealment; here, each report was authored separately. The opposition's claim that "they falsified reports to continue using force" is pure speculation unsupported by any witness or forensic proof.

In *Ramirez*, the Ninth Circuit reversed a conspiracy conviction where ambiguous acts and conversations "could just as easily be innocent as criminal." 714 F.3d at 1140–41. The same principle applies speculative inferences of concealment cannot substitute for proof of agreement.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

3. THE GOVERNMENT MISAPPLIES JURY INSTRUCTION 20 AND CONFLATES DERIVATIVE PARTICIPATION WITH DIRECT AGREEMENT

The prosecution insists the jury could find Wenger guilty under the "three-prong" test of Jury Instruction 20 — that he directly conspired with one person, knew others were involved, and believed his benefits depended on the venture's success. But this instruction is not an alternative definition of conspiracy; it is an evidentiary aid to infer agreement where direct proof is lacking. Even then, all three prongs must be independently satisfied. Here, none are.

In relation to the first prong there is no demonstrated direct agreement with Amiri. The cited texts involve no planning, meeting, or act of unlawful force contemporaneous with Wenger's messages. And as to the second prong, the government case shows that Wenger only had inconsistent associations with others and could, at best, only have reason to know of others' misconduct. *Reason to know,* however, is not *knowledge.* Lastly, regarding the third prong, there was no evidence that Wenger received or expected any benefit dependent on the conspiracy's success. Advancement within APD or camaraderie is not a *criminal* benefit.

The government's attempt to expand the conspiracy through chains, "trusted groups," and passivity falters as to Wenger. The Court rightly noted that "passivity or acquiescence" and mere presence on threads are not enough; independent proof is required to admit co-conspirator statements "without regard to the content of the messages," emphasizing that content alone cannot bootstrap the agreement. ("TR" Vol. 4 552:14-553:16); ("TR" Vol. 4 550:10-19) Here, the admitted texts show at most crude banter, sporadic encouragement, and isolated coordination talk—often not followed by action by Wenger—and extensive communications among others that did not include Wenger. ("TR" Vol. 5, 1074:7-1076:10); ("TR" Vol. 4, 744:4-745:5); ("TR" Vol. 4, 657:4-17); ("TR" Vol. 4, 717:10-25); ("TR" Vol. 4, 719:5-13). The government's own witness described hundreds

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

of Wenger–Evans messages as routine "chitchatting," with only a cherry-picked subset read to the jury. ("TR" Vol 5, 979:12-22); ("TR" Vol. 5, 955:10-22). This presentation cannot establish that Wenger knowingly joined any broader scheme.

The government's reading of Instruction 20 effectively erases the intent element of §241 — precisely what *Iribe* forbids. *United States v. Iribe*, 564 F.3d 1155, 1160 (9th Cir. 2009) (government must show agreement and intent to further its object under §241; intent requirement cannot be erased).

4. THE GOVERNMENT'S THEORY COLLAPSES UNDER KOTTEAKOS AND DUE PROCESS

What the prosecution describes is not a single conspiracy but a loose collection of unconnected acts by multiple officers — each with their own motives, methods, and incidents. This "rimless wheel" model of conspiracy has been rejected since *Kotteakos v. United States*, 328 U.S. 750 (1946), where the Supreme Court cautioned that extending liability by mere association "transfers the crime of conspiracy from agreement to the mere act of doing the same thing." Id. at 773.

Here, the government's evidence of "mutual trust," "similar attitudes," and "covering for each other" is precisely the associative glue *Kotteakos* forbids. Without a unifying meeting of the minds, Wenger cannot be swept into a collective indictment for others' acts.

5. UNDER JACKSON, THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW

Viewed in totality, the government's proof demonstrates only that:

a) Wenger exchanged vulgar or sarcastic text messages with colleagues;

b) He occasionally participated in or observed uses of force later deemed excessive *only by the Government in the case at bar;* and

c) He did not always document events perfectly.

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

None of these facts prove that Wenger entered into an agreement to violate civil rights. There is no written, oral, or tacit pact; no coordinated falsification; no recorded meeting; and no credible corroboration. The inference of agreement is speculative at best, contrary to Ninth circuit precedent.

The Court has already expressed "struggling to understand the government's legal theory" and required focused briefing on "what connects Mr. Wenger to that conspiracy" and how the evidence shows he "joined the conspiracy rather than engaged in like conduct or associated with the co-conspirators." ("TR" Vol. 4, 884:5-18); ("TR" Vol. 5, 1176:8-25). The trial record answers those questions in the government's *disfavor*: there is no concrete proof of an actual agreement that Wenger knew of and intentionally joined. The instructions themselves make clear that meeting, discussing matters of common interest, acting similarly, or helping without knowing of a conspiracy is not enough; nor is mere association.

Under Rule 29, the Court must set aside verdicts where the government's proof "was so lacking that it should not have been submitted to the jury." *Burks*, 437 U.S. at 16. This record meets that description precisely.

///

///

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**

## IV.   CONCLUSION

The government's opposition does not identify evidence of an agreement — only attitude, innuendo, and inference. §241 punishes conspiracies, not culture. The difference from "coarse humor and forceful policing" to "agreement to deprive constitutional rights" is not just a contrasting perspective but rather, as it should be, chasm the Government could not leap across.

Because the evidence, viewed in the light most favorable to the government, fails to establish beyond a reasonable doubt that Devon Wenger knowingly joined any conspiracy to violate civil rights, judgment of acquittal on Count One is constitutionally required.

Respectfully submitted,

DATED: October 22, 2025

_____/s/_____
Kasey A. Castillo, Esq.
CA State Bar Number: 236690
**KC LAW GROUP**
31566 Railroad Canyon Road
Suite 2, PMB 1123
Canyon Lake, CA 92587
Telephone: (951) 364-3070
Email: kasey@kc-lawgroup.com

DATED: October 22, 2025

_____/s/_____
Michael D. Schwartz, Esq.
CA State Bar Number: 166556
**THE MICHAEL SCHWARTZ FIRM**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90010
Telephone: (323)793-6735
Email: mds@themichaelschwartzfirm.com

*Attorneys for Defendant,*
DEVON CHRISTOPHER WENGER

**DEFENDANT DEVON CHRISTOPHER WENGER'S REPLY TO GOVERNMENT'S OPPOSITION TO RULE 29 MOTION**