ETHAN A. BALOGH, No. 172224
BALOGH & CO., APC
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@balcolaw.com

Attorneys for Defendant/Appellant
DEVON WENGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/ Appellee,<br><br>v.<br><br>DEVON WENGER,<br><br>Defendant/ Appellant. | Case No. 23 Cr. 269 JSW<br>USCA No. 25-7704<br><br>DEFENDANT DEVON WENGER'S REPLY BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL AND INDICATIVE RULING<br><br>Date: September 8, 2026<br>Time: 9:00 a.m.<br><br>Before the Honorable Jeffrey S. White<br>Senior United States District Judge |

# REDACTED VERSION OF MATERIAL TO BE FILED PROVISIONALLY UNDER SEAL

## INTRODUCTION

The Government opposes Defendant Devon Wenger's motion for new trial by contending that Dr. Bokarius's Report "is consistent with Rombough's trial testimony[.]"[1] But at it arrives at this conclusion by avoiding the substance of Rombough's serial statements to mental health professionals in search of treatment. The report establishes [redacted]. Rombough's [redacted], [redacted], and [redacted] as a result of Post-Tramatic Stress Disorder[2]—reported by Dr. Bokarius and accepted as true under the *Davis* test—undermine in full the narrative Rombough presented at trial, and it is likely a jury hearing this evidence would return an acquittal.

The Court should grant a new trial.

## ARGUMENT

The Government first takes issue with Dr. Bokarius's that Rombough was "[redacted]" from at least December 2021 onwards.[3] The Government doesn't deny these findings—it can't, as they are based on Rombough's statements—and instead asserts that the "Rombough's core testimony" was limited to events

[1] ECF 733 at 1 ("Opp").

[2] ECF 692 (Rombough's Sentencing Memorandum) at 7.

[3] Compare Opp. at 1 with MPA at 12; *see also* ECF 692-1 (Dr. Bokarius's Report) at 15.

before December 10, 2021.[4] But that's a dodge that ignores the breadth of Rombough's testimony.

Rombough, aka Rambo, aka Ramrod, testified to conspiring with Morteza Amiri to violate civil rights from February 2019 until March 22, 2022—long after his claimed mental disability—and the court granted the Government's motion to admit the plea agreement into evidence.[5] The Government's *ipse dixit* dismissal of Dr. Bokarius's Report reflects its failure to grapple with its import. It also ignores the *Davis* test which proceeds on the premise the jury believe the new evidence before assessing its likely effect.[6] Accepting the report as true, Rombough told Dr. Bokarius (and his other health care professionals) that [redacted] but that's not what he told the jury.

More broadly, the Government's never assesses the broader narrative super cop narrative Rombough offered, without qualification; Dr. Bokarius's Report reflects the opposite. As even recited by the Government, Rombough's testimony about the aftermath of the December shooting does *not* match Dr. Bokarius's Report.

Rombough told the jury that by January 2022, he "had left the gang unit and the SWAT team and just decided to be a normal patrol officer until I could leave."[7] Absent from that narrative is the basis supporting this decision: he quit SWAT because [redacted]

---

[4] Opp. at 1.

[5] *See* ECF 1 (indictment), ECF 239 (plea agreement), Ex. 1004.

[6] *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992).

[7] Opp. at 7.

[redacted].[8] Those explanations are the opposite of the conspiracy he confessed to, *viz.*, meting out extra-judicial punishment at every available opportunity because it felt good to him.[9]

Brass tacks: Rombough's statements, as presented in Dr. Bokarius's Report, as well as Dr. Bokarius's conclusions—accepted as true—undermine in full Rombough's cooperator testimony. Rombough's claim that he quit SWAT and thereafter [redacted] cannot be squared with Rombough's testimony about his free-wheeling quests for violence during the entire conspiracy period.

Worth noting too, the Government fails to address Dr. Bokarius's finding that Rombough [redacted]—and not related to any conspiracy—and proved [redacted].[10] Application of the *Davis* standard—accepting the newly discovered evidence is true and believed by the jury[11]—would result in the rejection of Rombough's critical trial testimony. In sum, for more than one half of the purported conspiracy, Rombough claimed (and his doctor supported) that he [redacted]. This undermines in full Rombough's super cop narrative, rendering it "totally incredible."[12] In other words, he wasn't pursuing options to mete out punishment or participating in any conspiracy, according to Dr. Bokarius's report. This evidence meets the *Davis* standard and supports the granting of a new trial.

Contrary to the Government's back up argument—that Wenger identified suspect and made an absurd request that no person believed literally—doesn't change the calculus. Yes,

---

[8] ECF 692-1 at 3.

[9] *See* ECF 661 at RT 502.

[10] ECF 692-1 at 11-12.

[11] *Davis*, 960 F.2d at 825

[12] *Id.*

Wenger texted, "Please find this guys and f*** him in the ass[,]"and yes, Rombough said "deal".[13] But neither Rombough nor anyone else did that because nobody thought the comment presented a genuine request. In reality, Wenger didn't want any person to do that act, and it is absurd to believe that he joined the conspiracy by making an agreement to find a man and anally rape him. The conspirators didn't carry out any rapes, much less anal rapes of suspects.

In contrast, the discovery reflected an abundance of homoerotic humor amongst the officers, including especially by Wenger.[14] The very exhibit the Government cites opens with a text from Wenger offering Rombough and Amiri that he'd "totally be [their] aggressive bottom any day of the week[.]"[15] But nobody thought Wenger was genuinely offering to be f****** in the a** by Rombough or Amiri, much less both. Likewise, when Amiri mentioned he would passing Wenger's mother's house, Wenger told him to "f*** her gently."[16] Equally unserious. And it would be equally absurd to argue that Wenger and Amiri entered into an agreement for Amiri to have "gentle sex" with his mother. So too the sole email Government asserts proves its conspiracy case. [17]

[13] Opp. at 9 citing Ex. 107 (redacted).

[14] *See* Indictment (at 27); *see also* Exs. 107, 406.

[15] Ex. 107. A "bottom" is the male partner receiving intercourse in a homosexual act of intercourse.

[16] Ex. 406 at 3.

[17] The other of Wenger's conduct the Government argues in support of conviction was Wenger texting he didn't like body cameras, and the uncharged incident involving robbery suspect Claudine Young. Nothing about those events links it to any conspiracy: Wenger didn't report back to Amiri and/or Rombough that he violated her civil rights and he didn't otherwise link his conduct that day to Amiri or Rombough or anyone else, much less any agreement with any person. To the contrary, Wenger expressed that Young's injury was the result of her attempted flight and her resistance to a lawful arrest. *See* Opp. at 9. Those comments do nothing to establish Wenger's agreement to mete out extra-judicial punishment to suspects.

"Conspiracy is the agreement to join a common scheme to commit an unlawful goal."[18] "The existence of an agreement is a necessary element of conspiracy, and as such, the Government must prove [its existence] beyond a reasonable doubt."[19]

> Conspirators do not enter into an agreement by happenstance, and because an agreement is the essential element of conspiracy, an agreement to commit a crime cannot be lightly inferred.[20]

The Ninth Circuit teaches that "[a] single conspiracy can only be demonstrated by proof that 'an overall agreement existed among the conspirators.'"[21] "Typically, the inference of an overall agreement is drawn from proof of a single objective,"[22] But that's not the case here.

"Furthermore, the evidence must show that 'each defendant knew, or had reason to know, ... that his benefits were probably dependent upon the success of the entire operation.'" [23] But again, that's not the case here: Wenger received no benefits from the identified text or from any agreement with Rombough and Amiri.

And as the Ninth Circuit further instructs, the Government's evidence of the defendant's "[k]nowledge of the purpose behind the conspiracy is an essential element of the crime, and evidence of knowledge must be 'clear.'"[24] But the Government's evidence again falls short.

---

[18] *United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018).

[19] *Id.*, at 767 (internal marks omitted).

[20] *Id.*, at 768.

[21] *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999) (quoting *United States v. Bibbero*, 749 F.2d 584, 587 (9th Cir. 1984).

[22] *Duran*, 189 F.3d at 1080.

[23] *Id.*, (quoting *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.1977)); *United States v. Arbelaez*, 719 F.2d 1453, 1459 (9th Cir.1983).

[24] *United States v. Hedgewood*, 977 F.2d 492, 497-98 (9th Cir. 1992).

In sum, the Government ultimately supports its case with an objectively unreasonable assessment of the text it offers: that Wenger's text formed his agreement to enter a conspiracy with Amiri and Rombough based on a desire for a suspect to suffer an anal rape. This text does not establish the alleged conspiracy. As the court noted,[25] Rombough's testimony was the critical link to support the conspiracy allegation. That testimony, however, cannot be squared with the medical evidence Rombough then possessed but withheld until his sentencing.

The Court should also keep in mind Rombough's and Wenger's lack of friendship, and that Rombough blackballed Wenger from SWAT, *i.e.*, denied him the supposed benefit for participating in a criminal conspiracy with him.[26] Rombough wasn't Wenger's friend, as he testified.[27] In fact, when pressed by the interviewing officers during his March 23, 2022 interview, Wenger explained [redacted] Rombough had [redacted]"[28]

[25] ECF 664 at RT 1189.

[26] ECF 662 at RT 662.

[27] *Id.*, at RT 600, 657.

[28] 23 Cr. 268, ECF 116, Sealed Ex. 5 at 52-53; *see also* ECF 206 (addressing internal affairs complaint based on the Lieutenant's conduct (and subsequent firing) as basis for prosecution).

As FBI S/A Zoback reacted, [redacted]."[29] In contrast, the evidence showed Amiri and Rombough were close, and that Rombough had warned Amiri to be careful because he understood Manly's phone was tapped.[30] Wenger received no such warning.

In sum, it is reasonably likely that any jury hearing the newly discovered evidence contained in Dr. Bokarius's report would reject Rombough's testimony and acquit. This Court should indicate it will grant this motion, and upon limited remand, vacate the judgment and proceed to a new trial.

Respectfully submitted,

DATED: August 24, 2026

BALOGH & CO., APC

*/s/ E A Balogh*
BY: ETHAN A. BALOGH
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 415.391.0440
Facsimile: 415.373.3901

Attorneys for Defendant
DEVON WENGER

---

[29] *Id.*

[30] *See* ECF 158 at 19-20.